PER CURIAM.
The United States Court of Federal Claims granted judgment to William P. Skinner and Mary W. Skinner on their tax refund claims. See Skinner v. United States, No. 95-599-T (CFC Feb. 10, 1999) (judgment). In its thorough and well-reasoned opinion, the trial court held that the Internal Revenue Service did not assess the Skinners within the applicable statutory time period. Crnkovich v. United States, 41 Fed.Cl. 168, 180 (1998). Final judgment was entered in favor of the Skinners after the United States chose not to contend that the Skinners had impliedly waived the requirement that the government assess them within the statutory period.
This court reviews the Court of Federal Claims’ grant of summary judgment de novo. Hatter v. United States, 64 F.3d 647, 649 (Fed.Cir.1995) Under that standard, this court concludes that the Court of Federal Claims correctly construed the law governing the statutory time period for assessment of the Skinners’ taxes as shown by their stipulation agreement. Because the Court of Federal Claims’ analysis needs no amplification, this court adopts as its own the opinion of the Court of Federal Claims to the extent that it relates to the Skinners’ case, a copy of which is attached as an appendix.
COSTS
Each party shall bear its own costs.
AFFIRMED

APPENDIX

Nos. 95-567T, 95-599T, 95-770T, 96-120T, 96-129T, and 96-379T
Filed: June 19, 1998
LAWRENCE P. CRNKOVICH, et al., Plaintiffs, v. THE UNITED STATES, Defendant.
Tax; taxation of partnerships under the Tax Equity and Fiscal Responsibility Act (TEFRA); statute of limitations for tax assessments of partnerships under TEFRA and I.R.C. §§ 6501(a), 6229(a) and (f); conversion from partnership to non-partnership items by entering a settlement agreement under I.R.C. § 6231(b)(1)(C); evaluation of whether a Form 906 agreement or a stipulation in a Tax Court proceeding constitutes a “settlement agreement” under I.R.C. § 6231(b)(1)(C).
Dana R. Taylor, Portland, Oregon, for plaintiffs.
William K. Drew, with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, Chief, and David Gustafson, Assistant Chief, Washington, D.C., for defendant.

OPINION

ANDEWELT, Judge.
I.
Before the court are five consolidated income tax actions involving common legal issues. In two of the actions, Crnkovich v. United States, No. 95-567T, and Skinner v. United States, No. 95-599T, the parties have presented one of these issues to the court in cross-motions for summary judgment. In Cmkovich, the plaintiffs, Lawrence P. and Naola A. Cmkovich (the Crnkoviches), seek to recover alleged over-payments for tax years 1983 through 1986. In Skinner, the plaintiffs, William P. and Mary W. Skinner (the Skinners), seek to recover alleged overpayments for tax years 1985 and 1988.[1] In their respective *1327 motions for summary judgment, both the Crnkoviehes and the Skinners contend that they did not owe the disputed taxes because the Internal Revenue Service (IRS) did not make the required assessments of tax liability until after the applicable statute of limitations for assessments had expired. For the reasons set forth below, the court denies the Crnkoviehes’ motion for summary judgment, grants defendant’s cross-motion for summary judgment with respect to the Crnkoviehes’ claim, and withholds judgment on the Skinners’ motion for summary judgment and defendant’s cross-motion with respect to the Skinners’ claim pending further briefing by defendant.
II.
The tax disputes herein arise from separate partnership agreements that the Crnkoviehes and the Skinners entered with a common general partner, Sol Fink-elman. From 1977 through 1986, the Crnkoviehes were limited partners in Duluth Properties Co. (Duluth). During 1982 and the tax years at issue here, the Skinners were limited partners in Progressive Properties Co. (Progressive). Both partnerships purchased commercial real estate property using nonrecourse seller financing. As a result of these investments, each partnership suffered losses which were passed on to the limited partners, including the Crnkoviehes and the Skinners, respectively, who in turn used these losses to offset their income. The IRS subsequently determined that the property acquisitions lacked economic substance and were not bona fide arm’s length transactions. Hence, the IRS issued notices of deficiency to Finkelman, the Crnkoviehes, and the Skinners, as well as other partners, for tax years prior to 1983, which is prior to the tax years at issue here. The notices of deficiency to Finkelman and the Crnkoviehes covered tax years 1977 through 1982 and the notice to the Skinners covered tax year 1982. In response to these notices, Finkelman filed two petitions in the Tax Court covering tax years 1975 through 1982 and the Skinners filed their own Tax Court petition for tax year 1982. Thereafter, the IRS issued “Notices of Final Partnership Administrative Adjustment” (FPAAs) for Duluth’s 1983 through 1986 tax years and for Progressive’s 1983, 1985, 1986, and 1988 tax years. On behalf of each partnership, Finkelman filed a Tax Court petition challenging the FPAA amounts.
After Finkelman filed the Tax Court actions on behalf of himself and the partnerships, the Crnkoviehes and the Skinners entered into agreements with the IRS concerning their individual tax liabilities stemming from the operation of the partnerships. As described in more detail below, in their respective agreements, the Crnkoviehes and the Skinners agreed to be bound by any resolution of certain common tax issues in the Tax Court actions filed by Finkelman covering tax years prior to 1983 (hereinafter referred to as the Finkelman case or the controlling case).
In the Finkelman case, the Tax Court ultimately resolved the allowability of depreciation for the acquired property in a manner adverse to Finkelman. Finkelman v. Comm’r, T.C. Memo 1989-72, ajfd without published opinion, 937 F.2d 612 (9th Cir.1991), cert. denied, 503 U.S. 918, 112 S.Ct. 1291, 117 L.Ed.2d 515 (1992). Under I.R.C. § 7481, the Tax Court’s decision became final on April 3, 1992. Approximately one year later, the IRS notified the Crnkoviehes and the Skinners as to the amount of taxes they each owed. The IRS calculated the amounts due by applying to their respective cases the resolution of the depreciation and partnership *1328 loss issues in the Finkelman case. After paying the assessed amounts and unsuccessfully seeking refunds administratively, both the Crnkoviches and the Skinners filed the instant actions. In their motion for summary judgment, plaintiffs argue that once they entered into their respective agreements with the IRS concerning their individual tax liabilities stemming from the operations of their respective partnerships, the statute of limitations in I.R.C. § 6229(f) became controlling and required the IRS, within one year, either to secure a waiver from plaintiffs or to asséss the taxes due from plaintiffs for the years in issue. Because the IRS assessed the taxes due more than one year after signing the agreements, plaintiffs contend that the IRS was time barred from making such assessments and collecting such taxes. In its cross-motion, defendant contends that the assessments were timely filed.
III.
To place plaintiffs’ statute of limitations argument in context, it is necessary to understand how the 1982 enactment of the Tax Equity and Fiscal Responsibility Act (TEFRA), Pub.L. No. 97-248, 96 Stat. 324, affected partnership taxation procedures. A fundamental principle underlying partnership taxation is that a partnership is not liable at the entity level for the payment of income taxes. See I.R.C. § 701. Rather, a partnership must file an information return (Form 1065) each year reporting items of income, deduction, and credit (I.R.C. § 6031) and these items of income, deduction, and credit are allocated among the partners who bear the tax consequences for them. See I.R.C. § 702. The allocation to each partner is reported on a Schedule K-l to the partnership’s Form 1065 return, and the partner must report his or her distributive share of these partnership items. Id.
Through tax year 1982, consistent with the principle that partners rather than partnerships are responsible for paying taxes, administrative and judicial proceedings regarding partnership items were conducted at the level of the individual partner. Hence, the IRS was forced to conduct distinct investigations for and, where appropriate, enter separate settlement agreements with each individual partner. But in 1982, Congress changed this approach when it enacted TEFRA, which created I.R.C. §§ 6221 through 6233 (hereinafter referred to as the TEFRA partnership provisions). The TEFRA partnership provisions, which became effective at the beginning of taxable year 1983, generally require resolution of tax issues as to partnership items at the partnership level. Pursuant to I.R.C. § 6221, “[ejxcept as otherwise provided in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level.” Partnership items, as defined in I.R.C. § 6231(a)(3), include “any item required to be taken into account for the partnership’s taxable year.”
Under TEFRA, for any partnership, one partner serves as the tax matters partner. See I.R.C. § 6231(a)(7). The IRS may commence a partnership-level administrative proceeding by mailing a notice of the beginning of the administrative proceeding to the tax matters partner and to all “notice” partners, all of whom have the right to participate in the partnership-level administrative proceeding. See I.R.C. §§ 6223 and 6224(a). Upon completion of the partnership-level administrative proceeding, the IRS may adjust items reported on the partnership’s information return (Form 1065) by mailing to the tax matters partner and to all “notice” partners an FPAA which may be challenged in the Tax Court. Every partner who has an interest in a partnership-level administrative proceeding is treated as a party to that proceeding and is bound by its outcome absent an agreement to the contrary. See I.R.C. § 6226(c).
As noted above, I.R.C. § 6221 provides for the determination of tax liability for partnership items on a partnership-wide basis “[e]xcept as otherwise provided in this subchapter.” In certain circumstances, partnership items are carved out for separate resolution between the IRS *1329 and individual partners. The circumstances under which partnership items become nonpartnership items are specified in I.R.C. § 6231(b), which provides:
(1) In general. — For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date — ■
(A) the Secretary mails to such partner a notice that such items shall be treated as nonpartnership items,
(B) the partner files suit under section 6228(b) after the Secretary fails to allow an administrative adjustment request with respect to any of such items,
(C) the Secretary enters into a settlement agreement with the partner with respect to such items, or
(D) such change occurs under subsection (e) of section 6223 (relating to effect of Secretary’s failure to provide notice) or under subsection (c) of this section.
IV.
As noted above, plaintiffs’ summary judgment motion concerns the effect of the applicable statute of limitations for the IRS’s assessment of plaintiffs’ partnership tax liabilities for tax years after TEFRA was enacted. The general statute of limitations for assessment and collection of taxes is contained in I.R.C. § 6501(a) which provides: “Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed....” Pursuant to I.R.C. § 6501(c), the parties can agree in writing to an extension of that three-year period. TEFRA included limitations provisions specifically applicable to partnerships in 1.R.C. § 6229(a), as follows:
(a) General Rule — Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—
(1) the date on which the partnership return for such taxable year was filed, or
(2) the last day for filing such return for such year (determined without regard to extensions).
I.R.C. § 6229(d) provides that if the IRS mails to the tax matters partner an FPAA with respect to any taxable year, the three-year limitations period in Section 6229(a) is suspended either for one year after the expiration of the period within which the FPAA may be challenged or if suit is brought challenging the FPAA, for one year after the court’s decision becomes final. In instances where partnership items have become nonpartnership items, pursuant to I.R.C. § 6231(b), the special assessment period in I.R.C. § 6229(f) applies. Section 6229(f) provides:
If, before the expiration of the period otherwise provided in this section for assessing any tax imposed by subtitle A with respect to the partnership items of a partner for the partnership taxable year, such items become nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date which is 1 year after the date on which the items become non-partnership items. The period described in the preceding sentence (including any extension period under this sentence) may be extended with respect to any partner by agreement entered into by the Secretary and such partner.[2]
*1330 V.
Plaintiffs contend that their respective agreements with the IRS qualify as “settlement agreements” for purposes of I.R.C. § 6231(b)(1)(C), that plaintiffs’ partnership items therefore became nonpart-nership items on the date the Commissioner signed these agreements, and that the IRS therefore was obliged under I.R.C. § 6229(f) to assess any taxes due within one year of the respective dates of these agreements. Plaintiffs argue that the IRS was barred from collecting the disputed taxes because the IRS did not make an assessment within the one-year period and plaintiffs never agreed to either a waiver or an extension of that period. Because the Crnkoviches and the Skinners did not enter into identical agreements with the IRS, the court will consider each agreement separately.
The Crnkoviches’ agreement is a Form 906 “Closing Agreement on Final Determination Covering Specific Matters” which was executed on January 19, 1988. The preamble of the Form 906 agreement states that the Crnkoviches have claimed deductions relating to the Duluth tax shelter for tax years 1977 through 1982, that items of income deductions and/or credits relating to the Duluth tax shelter are at issue before the Tax Court in the Finkel-man case, and that the Crnkoviches and the IRS “desire to settle the disputed TAX SHELTER issues on the same basis as finally determined in the CONTROLLING CASE” (emphasis added). Addressing tax years 1977 through 1982, the text of the Form 906 agreement reads as follows:
(1) The above adjustment, as specified in the preamble, shall be determined by application of the same formula as that which resolved the TAX SHELTER adjustment, whether litigated or settled, in the CONTROLLING CASE, as set forth in the final decision, as defined by Internal Revenue Code Section 7481, in the CONTROLLING CASE.
(2) All issues involving the above adjustment shall be resolved as if the taxpayer was the same as the petitioner in the CONTROLLING CASE.
(a) If the Court finds that any additions to tax or the Code Section 6621(d) interest are applicable to the underpayment attributable to the above-designated TAX SHELTER adjustment, the resolution of the TAX SHELTER issue and the applicability of such additions to tax or interest to that TAX SHELTER issue as determined in the CONTROLLING CASE, whether by litigation or settlement, shall apply to the taxpayer as if the taxpayer was the same as the petitioner in the CONTROLLING CASE.
Addressing tax years after 1982, which are the tax years at issue in this case, paragraph 2(b) of the agreement reads, as follows:
(b) If the adjustment is resolved in the CONTROLLING CASE in a manner which affects the same issue in other years (e.g., resolution affects basis and, therefore, the availability of losses in later years of [sic] affects depreciation schedules), the resolution will apply to the taxpayer’s later years as if the taxpayer was the petitioner in the CONTROLLING CASE.
Paragraph 4 of the agreement sets forth the applicable time period within which the IRS must make any tax assessment against the Crnkoviches, as follows:
(4) The amount of any Federal Income Tax, additions to tax, and Code Section 6621(d) interest attributable to the determination of the TAX SHELTER adjustment may be assessed by the IRS any time within two (2) years after the date on which the decision in the CONTROLLING CASE becomes final, notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Code Section 6501.
Defendant argues that even though the Crnkoviches Form 906 agreement indicates the parties’ “desire to settle” and then sets forth the terms of the settlement *1331 applicable to tax years 1983 through 1986, the agreement does not constitute a “settlement agreement” for those years within the scope of I.R.C. § 6231(b)(1)(C) and, hence, the IRS’s execution of the Form 906 agreement did not invoke the one-year assessment period in I.R.C. § 6229(f). Alternatively, defendant contends that assuming the Form 906 agreement constitutes an I.R.C. § 6231(b)(1)(C) settlement agreement, the IRS’s actions herein were timely because paragraph 4 of the agreement extends the period within which the IRS may assess any taxes until “two (2) years after the date on which the decision in the CONTROLLING CASE becomes final,” and the IRS made its assessment well within this two-year window.
VI.
The threshold issue is whether the Crnkoviches’ Form 906 agreement constitutes a “settlement agreement” under I.R.C. § 6231(b)(1)(C). Upon review, the court concludes that it does.
The Crnkoviches’ Form 906 agreement states that it is governed by I.R.C. § 7121, which authorizes the IRS to enter a written closing agreement with any person relating to the liability of that person for any internal revenue tax for any taxable period. Under I.R.C. § 7121(b), such an agreement is “final and conclusive” and, absent “fraud, malfeasance, or misrepresentation of a material fact,” may not be reopened or set aside. Given the finality and conclusiveness of any closing agreement authorized by I.R.C. § 7121, and given the parties’ indication that the agreement embodies their “desire to settle,” it would seem to follow that the executed Form 906 agreement is properly characterized as a “settlement agreement” with respect to any tax issues governed thereby.
Defendant disagrees. Defendant argues that this final and conclusive agreement embodying the parties’ “desire to settle” should be classified as a “piggyback” agreement rather than a settlement agreement because it does not finalize the settlement of any dispute but rather merely establishes enforceable procedures for settling a dispute in the future. In addition, defendant argues that the agreement cannot be classified as a settlement agreement because it fails to express a meeting of the minds on the material terms of the settlement so as to permit an immediate mechanical calculation of the amount owed by the Crnkoviches.
The court agrees that the Form 906 agreement certainly can be characterized as a piggyback agreement to the extent it piggybacks on the future resolution of certain tax issues in the Finkelman case. The court also agrees that the Form 906 agreement dictates a particular procedure to be followed in the settlement process. But characterizing the agreement as a piggyback agreement and recognizing that the agreement includes a procedure for the resolution of tax obligations hardly is inconsistent with characterizing the agreement as a “settlement agreement.” When deciding how to categorize the Form 906 agreement, the proper focus is on the parties’ “desire to settle” by tying the Crnkoviches’ tax liability to the outcome of the Finkelman case. By signing the agreement, the IRS agreed to procedures that would resolve certain issues and at that point defendant gave up the right it otherwise would have had to assess the Crnkoviches’ partnership taxes in a manner inconsistent with the resolution of the related issues in the Finkelman case.
Contrary to defendant’s suggestion, after the parties signed the Form 906 agreement, all that remained was the mechanical exercise of applying that agreement according to its terms. Once the Finkel-man decision became final, the parties simply would apply that result to the Crnkoviches’ tax years covered under the agreement. Because the Form 906 agreement predated the final decision in the Finkelman case, there necessarily would be a time lapse between the execution date of the agreement and the date the parties *1332 could calculate the Crnkoviehes’ tax liability. But such a delay does not negate the existence of a meeting of the minds between the parties as to the terms of a settlement. I.R.C. § 6231(b)(1)(C) refers to “entering] into a settlement agreement” (emphasis added) rather than actually performing that agreement. Although the parties could not calculate the actual amount of the settlement at the time they executed the Form 906 agreement, the parties fixed the terms of the settlement at that time.[3]
There is a contingent aspect to the instant settlement agreement in that if for some unforeseen reason the resolution of the Finkelman case did not affect the Crnkoviehes’ “other” tax years, the Finkel-man case would not bring final resolution to any of the Crnkoviehes’ post-TEFRA tax issues. {“If the adjustment is resolved in the CONTROLLING CASE in a manner which affects the same issue in other years, ... the resolution will apply to the taxpayer’s later years ...” (emphasis added).) This contingent aspect, however, does not mean that the Form 906 agreement should not be characterized as a “settlement agreement” for TEFRA purposes. The agreement embodies the parties’ binding determination as to how certain issues will be resolved. The parties agreed therein finally and conclusively to a specific resolution of certain disputed tax items upon the occurrence of the contingency referred to in the agreement. The fact that the agreement does not prescribe procedures for handling these tax items under all potential circumstances does not mean that the agreement should not be characterized as a “settlement agreement” with respect to those issues that in fact it does settle.[4]
In addition to the wording of the Form 906 agreement, support for classifying the agreement as an I.R.C. § 6231(b)(1)(C) “settlement agreement” is found in the function that such an agreement serves under the TEFRA partnership provisions. A “settlement agreement” is one of the listed actions under I.R.C. § 6231(b)(1) that converts partnership items to non-partnership items. As described generally above, this conversion of tax items from partnership to nonpartnership status is significant because the tax treatment of partnership items typically is determined at the partnership level whereas the tax treatment of nonpartnership items is determined at the individual partner level. At the time the IRS entered the Form 906 agreement, it faced competing incentives *1333 in determining how best to handle the partnership tax issues presented for the Crnkoviches’ posN1982 tax years. On the one hand, as reflected by the TEFRA partnership provisions, it ordinarily is efficient for the IRS to make the determination as to the tax treatment of partnership items at the partnership level. On the other hand, because the IRS was in the process of negotiating with the Crnkovich-es on an individual partner level with respect to pre-TEFRA tax years, there were potential efficiencies in also dealing with the Crnkoviches individually with respect to post-TEFRA tax years. In the Form 906 agreement, the IRS resolved these competing incentives by deciding to deal with the Crnkoviches individually and apart from any partnership-level determinations. For certain tax issues, the bilateral agreement establishes the terms that control the Crnkoviches’ personal tax liability without providing an exception in the event of a contrary resolution of the same tax issues at the partnership level. Hence, in entering the Form 906 agreement, the IRS chose to forego the advantages of making its determinations at the partnership level and opted instead to deal with the Crnkoviches individually with respect to the tax issues addressed in the Form 906 agreement. Entering into a “settlement agreement” under I.R.C. § 6231(b)(1)(C) is a statutory method of exercising such a choice.
Indeed, unless the tax items addressed in the Form 906 agreement were converted to nonpartnership items, the IRS could not have entered a binding agreement with the Crnkoviches as individual partners that would take precedence over a determination of these post-TEFRA tax issues at the partnership level. Because the parties have not suggested that any of the other potential methods in I.R.C. § 6231(b)(1) for effecting a conversion of partnership items to nonpartnership items even arguably applies, the IRS reasonably must have considered the Form 906 agreement to be an I.R.C. § 6231(b)(1)(C) settlement agreement that would allow such individualized treatment of these tax items.
Also supportive of the legal conclusion that the Crnkoviches’ Form 906 agreement constitutes a “settlement agreement” that converts partnership items to nonpartnership items is a modification to the IRS Manual issued by the IRS subsequent to the execution of the instant Form 906 agreement. The IRS amended the Manual to state:
Closing agreements should be avoided in settlements when subsequent years are TEFRA. On the date they are. executed by the Service these agreements convert partnership items to nonpart-nership items for the future years involved, triggering a one year assessment period under I.R.C. § 6229(f) for those years.
IRS Manual pt. 8, ch. 8300, § 8324(5). Consistent with this provision, the Crnko-viches argue that the effect of the IRS entering the Form 906 agreement was to convert partnership items to nonpartnership items so as to trigger the one-year assessment period in I.R.C. § 6229(f).
For all of the reasons set forth above, the court concludes that the Crnkoviches’ Form 906 agreement constitutes an I.R.C. § 6231(b)(1)(C) “settlement agreement” and that at the time the parties executed that agreement, they converted the partnership tax items covered therein to non-partnership tax items and thereby rendered applicable the limitations period in I.R.C. § 6229(f).
VII.
Defendant contends that even if the Crnkoviches’ Form 906 agreement constitutes a settlement agreement and the limitations period in I.R.C. § 6229(f) applies, the court nevertheless should grant its motion for summary judgment because the parties agreed in paragraph 4 of the agreement that the IRS could make the pertinent assessments up until two years *1334 after the Finkelman decision became final, which the IRS did.
The plain meaning of paragraph 4 would seem to support defendant’s argument. As set forth above, paragraph 4 provides: “The amount of any Federal Income Tax ... attributable to the determination of the TAX SHELTER adjustment may be assessed by the IRS any time within two (2) years after the date on which the decision in the CONTROLLING CASE becomes final.... ” Consistent with paragraph 1 of the Form 906 agreement, “the TAX SHELTER adjustment” refers to resolution of tax issues in the controlling case. Hence, the two-year period in paragraph 4 applies to “any Federal Income Tax” attributable to resolution of the tax issues in the controlling case. Paragraph 2(b) provides that in specified circumstances, “the resolution [of the adjustment in the CONTROLLING CASE] will apply to the taxpayer’s later years,” which includes the Crnkoviches’ post-1982 tax years at issue here. To the extent the tax shelter adjustment in the Finkelman case serves as a basis for a particular assessment for the Crnkoviches’ post-1982 tax years, pursuant to paragraph 2(b), the two-year period in paragraph 4 would govern that assessment.
The Crnkoviches’ primary argument to the contrary focuses on the final phrase in paragraph 4 which reads: “notwithstanding the expiration of any period of limitation on assessment and collection otherwise prescribed by Code Section 6501.”[5] The Crnkoviches argue that because the only limitations period mentioned in paragraph 4 is the generally applicable three-year period for assessment in I.R.C. § 6501, the parties did not intend to extend other unmentioned limitations periods such as the one-year assessment period in I.R.C. § 6229(f) which is applicable when partnership items become nonpartnership items. Because the IRS’s assessment occurred more than one year after the execution of the Form 906 agreement, the Crnkoviches argue that the assessment was untimely.
In response, as explained above, the portion of paragraph 4 that precedes the “notwithstanding” phrase upon which the Crnkoviches rely unambiguously covers assessments for post-1982 tax years that are based upon application of and thereby attributable to the decision in the Finkel-man case.[6] As to the “notwithstanding” phrase, Webster’s Third New International Dictionary 1545 (1976), defines “notwithstanding” as “in spite of.” Given this definition, the phrase “notwithstanding ... Section 6501” cannot reasonably be interpreted as creating an exception for some tax assessments that otherwise fall within the literal scope of paragraph 4. Rather, the phrase merely indicates that the preceding phrase in paragraph 4 applies to pre and post-1982 tax issues “in spite of’ the fact that the statute of limitations in I.R.C. § 6501 may produce a different result. Consequently, the phrase “notwithstanding ... Section 6501” does not create any exception to the broad authorization in the preceding phrase allowing the IRS to make assessments within two years of a final decision in the Finkelman case.
Moreover, the Crnkoviches’ focus on the lack of any reference in paragraph 4 to the *1335 limitations period in I.R.C. § 6229(f) ignores the possible reasonable explanations that exist for the omission of such a reference which do not in any way reflect an intent to be bound by the one-year limitations period in Section 6229(f). For example, the IRS may have concluded, as the ■government now alleges, that the one-year period in Section 6229(f) merely extends but does not supersede the assessment period prescribed in I.R.C. § 6501. Assuming such an interpretation, there would be no need to mention Section 6229(f) in addition to Section 6501 in paragraph 4.[7] Alternatively, at the time of the agreement, the IRS may have believed, as it now contends, that the Form 906 agreement did not function as an I.R.C. § 6231(b)(1)(C) “settlement agreement” for the post-1982 tax years. If such were the case, the IRS certainly would not have included any reference in paragraph 4 of the settlement agreement to the limitations period in I.R.C. § 6229(f). On the other hand, the specific reference to I.R.C. § 6501(a) in paragraph 4 may simply reflect the parties’ primary focus on pre-1982 tax years rather than an intent to establish different assessment periods for pre and post-1982 tax years.
On this last point, it is not reasonable to conclude that the parties would have intended paragraph 4 to result in a different assessment deadline for post-1982 tax years than for pre-1982 tax years. The parties understood at the time they executed the Form 906 agreement that the exact amount of the Crnkoviches’ tax liability could not be determined until the Tax Court rendered a final decision in the Finkelman case. Hence, it would seem to follow that the parties would not have intended to oblige the IRS to make any assessment until after the controlling decision in Finkelman was final. In this regard, one of the reasons the court concluded that the Form 906 agreement constitutes an I.R.C. § 6231(b)(1)(C) “settlement agreement” is that the IRS would have deemed it efficient to deal with all of the Crnkoviches’ tax years together at the same level. A separate limitations period for the post-TEFRA tax years would be inconsistent with such an aim.
To support their contrary interpretation of paragraph 4, the Crnkoviches rely upon Conway v. Commissioner, 68 T.C.M. (CCH) 501 (1994). Conway, like the instant case, involved a Finkelman tax shelter in which the parties generally agreed to be bound by the result of the Finkel-man case. The Conway parties entered a Form 906 agreement that contained provisions that were identical in pertinent part to paragraphs 2(b) and 4 of the instant Form 906 agreement. The 1982 tax year in issue in Conway, like the tax years in issue here, was covered by paragraph 2(b)’s “other years” language. But unlike the instant case, in Conway, prior to entering the Form 906 agreement, the parties had entered a separate stipulation covering the 1982 tax year in issue. When measured by the three-year limitations period that was controlling in the prior stipulation, the IRS’s assessment for tax year 1982, issued after the decision in Finkel-man, was timely. The taxpayer, however, argued that the two-year limitations period in paragraph 4 of the Form 906 agreement *1336 controlled and under that shorter assessment period, the IRS’s assessment was untimely.
The Tax Court rejected the applicability of the two-year period in paragraph 4 of the Form 906 agreement on a series of independent grounds. The Crnkoviches particularly emphasize one paragraph in Conway in which the Tax Court offers a possible interpretation of the two-year period in paragraph 4 as not reaching the “other years” referred to in paragraph 2(b). The Tax Court’s interpretation, however, was tentative (“it does not appear ...” id. at 502), and was not based on a parsing of the words of the pertinent paragraphs of the agreement but rather on an evaluation of the reasonable expectations of the parties. As to such’ expectations, in rejecting the application of the shorter two-year assessment period, the court explained: “[W]e do not expect that [the IRS] intended to shorten the period for assessment of any later years for which the normal assessment period would have been 3 years.” Id.[8] But the entire discussion upon which the Crnkoviches rely is dictum because the Tax Court reasoned that even if the parties intended paragraph 4 to cover tax year 1982, paragraph 4 could not displace the prior stipulation.
In any event, a final determination of the meaning of the Form 906 agreement properly must start with and focus on the words used by the parties in that agreement. As described above, the wording of the Crnkoviches’ Form 906 agreement requires the interpretation that the two-year period in paragraph 4 applies to the tax years in issue. Moreover, the instant facts differ materially from those in Conway. For example, application of the paragraph 4 assessment period here would not, as it did in Conway, conflict with a limitations period embodied in a prior stipulation. In addition, unlike Conway, interpreting paragraph 4 as applying to the tax years at issue here is fully consistent with the parties’ reasonable expectations. On the instant facts, the IRS’s reasonable expectation was that it would not assess taxes owed until after the Tax Court rendered a final decision in the Finkelman case, even if that decision occurred more than one-year after entering the settlement agreement.
Thus, pursuant to paragraph 4 of the Crnkoviches’ Form 906 agreement, the parties agreed that the IRS had two years after a final decision in the Finkelman case to make an assessment. I.R.C. § 6229(f) allows for such mutual extensions of the applicable statutory limitations period and the IRS’s assessment occurred within that extended period. Accordingly, defendant’s motion for summary judgment *1337 with respect to the Crnkoviches’ refund claim is granted.
VIII.
Turning to the Skinners’ agreement, instead of employing a Form 906 agreement, the parties employed a stipulation they had entered in a pending Tax Court action brought in response to a deficiency notice covering tax year 1982. The preamble of that stipulation reads as follows:
With respect to the adjustment in respondent’s notice of deficiency relating to the following partnership:
PROGRESSIVE PROPERTIES
the parties stipulate to the following terms of settlement:
Eight numbered paragraphs follow the preamble, some of which employ similar language to that employed in the pertinent paragraphs of the Crnkoviches’ Form 906 agreement. Paragraphs 2 and 3 address tax year 1982, which was the subject of the Tax Court action, and provide as follows:
2. The adjustment specified in the preamble above shall be redetermined by application of the same formula as that which resolves the partnership adjustment with respect to [Finkel-man]....
3. All issues involving the above adjustment shall be resolved as if the petitioners in this case was/were the same as the taxpayer in the CONTROLLING CASE:
a. If the Court finds that any additions to tax or the section 6621(c) interest are applicable to the underpayment attributable to the above-designated partnership adjustments, the resolution of the partnership issue and the applicability of such additions to tax or intérest to that issue in the CONTROLLING CASE, whether determined by litigation or settlement, shall apply to petitioners as if the petitioners in this case was/were the same as the taxpayer in the CONTROLLING CASE.
Paragraph 4 encompasses tax years that were not actually the subject of the Tax Court action, including tax years 1985 and 1988, which are at issue in the instant action. Paragraph 4 states:
4.If the adjustment is resolved in the CONTROLLING CASE in a manner which affects the same issue in other years (e.g., the settlement affects basis and therefore the availability of losses in later years or affects depreciation schedules), the resolution will apply to petitioners [sic] later years as if the petitioners in this case was/were the same as the taxpayer in the CONTROLLING CASE.
After the eighth paragraph, the stipulation concludes with the following sentence: “The parties agree to this STIPULATION OF SETTLEMENT.”
The Skinner agreement raises the same two basic issues addressed above with respect to the Crnkoviches’ Form 906 agreement — whether the agreement constitutes an I.R.C. § 6231(b)(1)(C) “settlement agreement” and, if so, whether the IRS made an assessment within the applicable limitations period. There is no dispute that if the Skinner agreement does not constitute an I.R.C. § 6231(b)(1)(C) settlement agreement, the IRS’s assessment was timely and defendant’s motion for summary judgment must be granted.
Turning to the initial issue of whether the Skinner agreement should be classified as a “settlement agreement,” the words the parties chose to use in that agreement are even more direct and to the point than the words the parties used in the Crnko-vich agreement. The parties specified in the preamble of the stipulation that the following eight paragraphs constitute “terms of settlement.” As to those “terms of settlement,” paragraph 4 makes it clear that they encompass not only the tax years presented in the Skinners’ pending Tax Court litigation, but also “other years.”
Defendant asks the court when evaluating whether the stipulation constitutes an I.R.C. § 6231(b)(1)(C) “settlement agree *1338 ment” to focus on how the agreement operates rather than upon the parties’ characterization of the stipulation as involving a settlement. The pertinent provisions in the stipulation are identical to those in the Crnkovich Form 906 agreement. Because defendant relies upon essentially the same arguments that it made regarding the Crnkovich agreement, the court’s grounds for rejecting these arguments with respect to the Crnkovich agreement apply equally to the Skinner agreement. The wording employed in the Skinners’ stipulation exhibits the parties’ intent that the stipulation constitute a settlement agreement. Specifically with respect to tax years 1985 and 1988, the years at issue here, the stipulation reflects the IRS’s decision to resolve certain issues with the Skinners rather than to address those issues at the partnership level. To achieve this end, the partnership items for these post-TEFRA years had to be converted to nonpartnership items. Paragraph 4 of the stipulation served this purpose and the parties’ characterization of the stipulation as a “settlement agreement” at least suggests that the IRS understood that it served this purpose.[9]
Hence, the court agrees with the Skinners’ characterization of the stipulation as an I.R.C. § 6231(b)(1)(C) “settlement agreement.” That agreement converted the tax items covered therein from partnership to nonpartnership items and rendered applicable the limitations period in I.R.C. § 6229(f).
IX.
The determinative issue on the cross-motions for summary judgment with respect to the Skinners therefore becomes whether the IRS made its assessment within the limitations period in I.R.C. § 6229(f). Because the IRS did not make its assessment within one year after entering into the stipulation, unless the period was “extended ... by agreement,” the assessment was late under the one-year period in I.R.C. § 6229(f). This brings the court to paragraph 4 of the Skinner agreement.
Unlike paragraph 4 in the Crnkovich agreement, there is no reference in paragraph 4 of the Skinner agreement to a two-year assessment period following a final decision in the controlling case. Paragraph 4 of the Skinner agreement states that the resolution of the controlling case “will apply to petitioners [sic] later years.” An implication of this statement is that the parties intended the controlling case to be determinative and that the parties did not anticipate that the applicable statute of limitations for assessment would run prior to the final resolution of the controlling case. Although the stipulation implies that any statute of limitations would be extended until after the Finkelman decision, it does not state so specifically and does not indicate the length of any such extension.[10] Because the parties have not addressed in their briefs whether a statute of limitations can be extended by an implied agreement, the court will allow defendant an opportunity to brief the issue. *1339 If defendant chooses not to present such an argument or does but fails to prevail, the court will grant the Skinners’ motion for summary judgment based on their argument that the statute of limitations expired prior to any assessment by the IRS.
The court appreciates that a decision that the statute of limitations expired could be characterized as a windfall to the Skinners. Not only would the Skinners escape their agreement to be bound by the decision in the controlling case, but also they possibly could secure a different and more favorable tax outcome than the other limited partners in the Progressive partnership. This court’s role, however, is simply to apply the tax laws as Congress drafted them. Congress has determined that a crucial part of its statutory scheme covering taxes is the inclusion of statutes of limitations. By their very nature, statutes of limitations can produce outcomes that can be categorized as windfalls because the limitations periods serve to bar claims presented by taxpayers or the IRS that otherwise are meritorious. In Stanley v. United States, 140 F.3d 1023, 1030 (Fed.Cir.1998), the Court of Appeals for the Federal Circuit explained:
Our decision awards ... a windfall of some $600,000. Though this may seem offensive to many other taxpayers who mostly give but do not receive, that is not a sufficient reason to deny [the] claim. See O’Bryant [v. United States, 49 F.3d 340, 346 (7th Cir.1995) ] (“[A]l-though it may seem unjust that the IRS cannot recover its erroneous refund in this case (after all, our holding does give the O’Bryants a windfall), we cannot base our resolution of the issue before us on the equities of a particular factual situation.”) Our strict adherence to the law cuts both ways — sometimes the law favors the taxpayer, as here, other times it favors the Government. See, e.g., Commissioner v. Lundy, 516 U.S. 235, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996). This case is yet another good example though of the rule that “[i]t is rare that tax law bears any recognizable relationship to common sense.” Cohen [v. United States, 995 F.2d 205, 209 (Fed.Cir.1993) ]. Be that as it may, the IRS cannot entirely absolve itself from responsibility for the outcome. It was the IRS’s failure to timely record the tax assessment that resulted in its giving the erroneous tax refund; it was the IRS that faded to timely bring suit or reassess the relevant tax year once the error was discovered.
If defendant is unable to demonstrate that the limitations period was “extended ... by agreement” and thus loses with respect to the Skinner refund claims, that loss is due to the IRS’s inaction. Notwithstanding the controlling statute of limitations, the IRS failed to make an assessment within the statutory time period and failed to include in the stipulation a provision, analogous to the provision included in the Crnkoviches’ Form 906 agreement, in which the parties agreed to an extension of the one-year statutory period for assessments after the tax items were converted from partnership to nonpartnership items.

Conclusion

For the reasons set forth above, the court denies the Crnkoviches’ motion for summary judgment and grants defendant’s cross-motion for summary judgment with respect to the Crnkoviches’ refund claim. As to the Skinners’ motion for summary judgment and defendant’s cross-motion with respect to the Skinners’ claim, the court will suspend further consideration pending further briefing. On or before July 17, 1998, the parties shall file a status report proposing scheduling for further proceedings in these consolidated actions. On or before July 17, 1998, defendant may file a supplemental brief addressing the issue of implied waiver in the context of *1340 the Skinner claim. On or before July 31, 1998, plaintiffs shall file any response.
IT IS SO ORDERED.

. The Skinners initially sought additional refunds for tax years 1983 and 1986. Although these refund claims, along with a portion of their claim for tax year 1985, were not timely filed, plaintiffs argued that they should nevertheless be permitted to pursue these claims under a theory of equitable tolling or equitable estoppel. Subsequently, the Supreme Court rendered a decision in United States v. Brockamp, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), in which the Court held that equitable tolling was inconsistent with *1327 the clear and implicit time requirements set forth in I.R.C. § 6511. At oral argument, in response to Brockamp, the Skinners dropped their equitable arguments and the claims depending on those arguments and the only remaining claims are those involving the alleged overpayments for tax year 1988 and $5,993.65 of the alleged overpayments for tax year 1985.

. The Tax & Miscellaneous Revenue Act of 1988 amended I.R.C. § 6229(0 by adding the last sentence to permit extensions of the one-year assessment period. This amendment was retroactively effective for partnership tax years beginning after September 3, 1982.

. Indeed, the instant situation can be analogized to a situation where the parties reach a settlement based on an agreement that on a specified future date one party will pay the other a specific amount plus interest, to be calculated at the market rates prevailing on the specified future date. Uncertainty as to the ultimately applicable interest rate and, by extension, the precise settlement amount does not alter the fact that a settlement agreement existed on the date the parties signed the agreement. The settlement date is that date on which parties agree to apply a specific procedure in the future.

. To support its contention that the Form 906 agreement should not be classified as a "settlement agreement,” defendant points to the one-year statutory period for assessment that, under I.R.C. § 6229(f), applies upon entry into a “settlement agreement.” Invoking such a time period here would not make sense, defendant argues, because the parties determined to allow the Finkelman case to control and until that case was resolved, the IRS would not be in a position to make a correct assessment. But I.R.C. § 6229(f) permits extensions of this one-year period upon agreement between the parties. Hence, I.R.C. § 6229(f) anticipates that the statutory one-year period may not always be sufficient and in effect permits the IRS, in cases where that’ period is not sufficient, to insist on an extension of that period as a condition of settlement. Thus, in situations where a precise assessment of tax liability is not possible at the time the IRS enters a Form 906 agreement, the IRS can protect its interests simply by including a provision in the agreement extending the one-year period for assessment to a point in time where such a precise assessment can be made. Indeed, as described below, the IRS did precisely that herein by providing for an extension of the one-year limitations period in paragraph 4 of the Form 906 agreement.

. Based on an excessively narrow reading of the terminology employed in paragraph 4, the Crnkoviches make an argument that paragraph 4 does not apply to their post-1982 tax years. The Crnkoviches insist that "the TAX SHELTER adjustment” refers only to the adjustment to the pre-TEFRA tax items to which the preamble of the agreement specifically refers. As the Crnkoviches themselves acknowledge, however, paragraph 2(b) extends the adjustment to post-TEFRA years. This extension obviates the need to mention separately these years in paragraph 4.

. The Crnkoviches argue that if the court finds ambiguous the language of paragraph 4 with respect to its scope, the court should interpret that ambiguity against the IRS as the drafter of the agreement. But because the court finds the language of paragraph 4 to be unambiguous, the court need not invoke this rule of contract interpretation. '

. I.R.C. § 6501(a) unambiguously states that the IRS has only three years to make an assessment (“any tax ... shall he assessed within 3 years” (emphasis added)); On the other hand, the three and one-year limitations periods in I.R.C. §§ 6229(a) and (!) do not unambiguously define an end date for making an assessment in that they instead use the phrase "shall not expire before.” The failure in Section 6229 to define an end date leaves open the possibility that the applicable limitations period may expire after the periods set forth therein. Under this interpretation, the statute of limitations in Section 6501 would control if it expires after expiration of the three and one-year periods in Section 6229. Section 6229 would serve only to extend the assessment period under Section 6501. Section 6501(n) suggests that Section 6229 serves as an extension by providing: "For extension of period in case of partnership items (as defined in Section 6231(a)(3)), see Section 6229.”

. The Tax Court explained that paragraph 4 did not apply to years other than those specifically mentioned in the preamble of the agreement as follows:
Although paragraph 2(b) would extend the result to years not specifically designated on the Form 906 closing agreement, it does not appear that the 2-year window for assessment contained in paragraph 4 and the waiver of deficiency procedures of paragraph 5 apply to any years other than those specifically agreed to by the parties. Indeed, we do not expect that petitioners intended to extend the assessment period for already closed years that could have been covered by paragraph 2(b) of the closing agreement. Likewise, we do not expect that respondent intended to shorten the period for assessment of any later years for which the normal assessment period would have been 3 years. See sec. 6501.
Even if we were to conclude that the parties’ closing agreement covered the 1982 tax year with respect to the 2-year window, longstanding case law would not permit the parties to disregard this Court's jurisdiction once it has been invoked. Further, it does not matter that both parties were in agreement about disregarding or circumventing this Court’s jurisdiction: once invoked, the period for assessment is extended, and an assessment is not possible without a decision or order of this Court. Moreover, the language of paragraphs 2, 4, and 5 of the closing agreement would not be applicable to 1982 because a statutory notice of deficiency was issued and a petition was filed with respect to that year.
Id. at 502-03 (citations omitted).

. To support its position, defendant points to dicta in the Tax Court decision in Fisher v. Comm'r, 68 T.C.M. (CCH) 599, 602 (1994) (citing Adams v. Comm’r, 85 T.C. 359, 369, 1985 WL 15386 (1985)), in which the Tax Court opined that a "Stipulation of Settlement” involving a piggyback agreement "did not settle or compromise the matters in dispute but merely prescribed a procedure whereby those matters would be adjudicated.” That case, however, did not raise or purport to resolve the issue of the proper interpretation of the term "settlement agreement” in I.R.C. § 6231(b)(1)(C).

. The Skinners note correctly that the IRS could have averted any dispute as to the timeliness of the assessment if, when it realized that the final decision in Finlcelman would not occur within I.R.C. § 6229(i)'s one-year window, it issued a protective assessment in an estimated amount. It is not apparent, however, that the parties would have intended to oblige the IRS to take such an action because the heart of their agreement involved an understanding that no determination as to taxes due would occur until the Finlcelman decision became final.