**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ARON B. KATZ and PHYLLIS A.
KATZ,

               Petitioners-Appellants,

      v.

COMMISSIONER OF INTERNAL
REVENUE,

            Respondent-Appellee.

Nos. 01-9009, 01-9010, 01-9011

**APPEAL FROM THE UNITED STATES TAX COURT**
**(T.C. Nos. 181-98, 460-96, 780-97)**

Andrew M. Low (Laurence E. Nemirow, with him on the briefs), of Davis
Graham & Stubbs LLP, Denver, Colorado, for Petitioners-Appellants.

Robert J. Branman, Attorney, Tax Division, Department of Justice (Eileen J.
O'Connor, Assistant Attorney General, and Bruce R. Ellisen, Attorney, Tax
Division, Department of Justice, with him on the brief), Washington, D.C., for
Respondent-Appellee.

Before **LUCERO** and **HARTZ**, Circuit Judges, and **ROBINSON**, District Judge. *

**HARTZ**, Circuit Judge.

*The Honorable Julie A. Robinson, United States District Judge for the
District of Kansas, sitting by designation.

This case involves the intersection of the laws governing income taxes and bankruptcy. Mr. Aron Katz (Taxpayer) was a partner in a number of partnerships that suffered substantial losses during a year in which he filed for bankruptcy. On his income tax return for that year, Taxpayer allocated between himself and his bankruptcy estate the losses attributable to his interests in the various partnerships. The question before us is whether the Commissioner of Internal Revenue can challenge that allocation in a proceeding involving only the Taxpayer, or whether the Commissioner must first bring a partnership-level proceeding. We hold that a partnership-level proceeding is necessary.

I.    **Background**

Taxpayer's partnerships did not do well in 1990. The losses attributable to his interests exceeded $19 million. The losses generated by one of the partnerships, a real estate investment company called Century Centre Associates, Ltd. (Century), accounted for 96.7% of this total. On July 5, 1990, Taxpayer filed a petition for Chapter 7 bankruptcy relief. Although he could have elected to bifurcate his 1990 tax year into two short years, 26 U.S.C. (I.R.C.) § 1398(d)(2)(A), Taxpayer opted instead to file a single return for the entire year, resulting in his 1990 income taxes being treated as a post-petition debt not subject to the bankruptcy proceedings.

-2-

The Internal Revenue Code and related regulations require partnerships to prepare Schedule K-1 forms that report each partner's share of partnership income and losses. I.R.C. § 6031; Treas. Reg. §§ 1.6031(b)-1T(a)(1), (3). For the year 1990, Century and several other partnerships filed returns that included two separate K-1 forms relating to Taxpayer. The first K-1 issued by each of these partnerships concerned Taxpayer in his individual capacity and showed the income and losses that had accrued prior to Taxpayer's filing for bankruptcy. The second K-1 concerned Taxpayer's bankruptcy estate and reported post-petition tax items. The remaining partnerships of which Taxpayer was a member did not distinguish between pre-petition and post-petition items in the K-1 forms they prepared, instead allocating all items to Taxpayer. As to these partnerships, Taxpayer filed Notices of Inconsistent Treatment in which he allocated the tax items between himself as an individual and his bankruptcy estate.

On his individual tax return for 1990, Taxpayer reported that he had suffered over $19 million in losses before he declared bankruptcy. These losses exceeded the amount that he could apply to reduce his tax liability for 1990, so Taxpayer carried the losses over to tax years 1991, 1992, 1993, and 1994. Disputing the validity of those carryovers, the Commissioner issued notices of deficiency to Taxpayer and his wife, Phyllis Katz, for all four years. (Although the couple had filed separate tax returns for 1990, they filed jointly the next four

years.) The Commissioner contended that Taxpayer could not allocate the 1990 partnership losses between himself and his bankruptcy estate and that Taxpayer's interest in any partnership losses incurred during 1990 passed to the bankruptcy estate when he filed for bankruptcy. Thus, the Commissioner argued, Taxpayer in his individual capacity could not claim deductions based on those losses.

Taxpayer and his wife contested the notices of deficiency in the Tax Court. The parties settled all matters of dispute except the treatment of partnership losses. With respect to this issue, Taxpayer argued that the Tax Court lacked jurisdiction to enforce the notices insofar as they concerned adjustments to partnership items. To understand this argument requires a brief discussion of the governing statute and regulations.

Under the Internal Revenue Code, "[p]artnerships, as such, are not subject to the federal income tax." *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998). Instead, "partnership income and expenses 'pass through' to the individual partners." *Chimblo v. Comm'r*, 177 F.3d 119, 121 (2d Cir. 1999) (citing I.R.C. §§ 701, 6031). Until 1982 the process of reviewing tax returns of individual partners, rather than the return of the partnership itself, created a significant administrative problem. To address tax issues arising from a single partnership, the IRS needed to initiate multiple proceedings. *Id.* "[T]he IRS was forced to conduct distinct investigations for and, where appropriate, enter separate

-4-

settlement agreements with each individual partner." *Crnkovich v. United States*, 202 F.3d 1325, 1328 (Fed. Cir. 2000). In response to this problem, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), I.R.C. §§ 6221-6233, included "unified partnership audit examination and litigation provisions," which "centralized the treatment of partnership taxation issues, and ensure[d] equal treatment of partners by uniformly adjusting partners' tax liabilities." *Chimblo*, 177 F.3d at 121 (internal quotation marks and citations omitted). *See generally Callaway v. Comm'r*, 231 F.3d 106, 107-12 (2d Cir. 2000) (discussing TEFRA treatment of partnerships).

Section 6221 of TEFRA states that "[e]xcept as otherwise provided in this subchapter, the tax treatment of any partnership item . . . shall be determined at the partnership level." A partnership-level proceeding is the exclusive means for adjusting a partnership item. *See Maxwell v. Comm'r*, 87 T.C. 783, 788-89 (1986). The Tax Court lacks authority to make partnership-item adjustments in a partner-level proceeding except in circumstances not pertinent to this case. *See Kaplan*, 133 F.3d at 473.

A similar rule applies to an item whose tax treatment is dependent on the treatment of a partnership item. Such an item is called an "affected item." *See* I.R.C. § 6231(a)(5) ("The term 'affected item' means any item to the extent such item is affected by a partnership item."). The Tax Court has explained that

"'because the tax treatment of an "affected item" depends upon the partnership-level determination, affected items generally cannot be tried as part of a partner's tax case prior to the completion of the partnership-level proceeding.'" *GAF Corp. & Subsidiaries v. Comm'r*, 114 T.C. 519 (2000) (quoting *Gillilan v. Comm'r*, 66 T.C.M. (CCH) 398, 1993 WL 311552 (1993)).

The dispositive issue here is whether the Commissioner's proposed adjustments to Taxpayer's income tax liability required an adjustment to either a partnership item or an affected item. The Internal Revenue Code provides a common-sense definition of "partnership item," but permits the Secretary of the Treasury to provide for appropriate exceptions by regulation. It states:

> The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. § 6231(a)(3).

Taxpayer argued that "his share of the partnerships' 1990 net operating losses were 'partnership items' and that the carryforwards of these losses to subsequent years were 'affected items.'" Aplt. Br. at 9. To support this claim, he cited to the general rule set forth in Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i):

> (a) In general. For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of

-6-

the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:

(1) The partnership aggregate and *each partner's share of* each of the following:

(i) Items of income, gain, *loss*, deduction, or credit of the partnership . . . .

(emphasis added).  Consequently, in Taxpayer's view, the Commissioner could adjust these losses only in a partnership-level proceeding.

In response to Taxpayer's argument, the Commissioner relied on Treasury Regulation § 301.6231(c)-7T(a) (the Bankruptcy Regulation), which specifically addresses the impact of bankruptcy on the characterization of items as partnership items.  According to the Commissioner, the regulation (which will be discussed below) converted Taxpayer's 1990 partnership losses into nonpartnership items.

The Tax Court rejected Taxpayer's jurisdictional argument.  It did not, however, rely on the Bankruptcy Regulation.  Rather, the court reasoned that the allocation of partnership tax items between the Taxpayer and his bankruptcy estate is not a "partnership item," an analysis that had not been suggested by the Commissioner.

The Tax Court's decision turned on its view that "a partner in bankruptcy and his bankruptcy estate are appropriately treated as a single partner for purposes of TEFRA procedures."  *Katz v. Comm'r*, 116 T.C. 5, 12 (2001).  In particular, the court said that "once the partnership has determined the distributive share of a

partner who happens to be in bankruptcy, there exists no statutory obligation upon the partnership to subdivide the distributive share between such partner and his bankruptcy estate." *Id.* at 13-14. Thus, "[t]he subdivision of partnership tax items between the two related but independently taxed entities is . . . not a determination 'required to be taken into account for the partnership's taxable year,'" *id*. at 14, which is a condition for being a "partnership item" under § 6231(a)(3).

In deciding that partnership-level review under § 6226(f) does not extend to disputes concerning the allocation of losses between a partner and that partner's bankruptcy estate, the Tax Court observed that its interpretation was consistent with the legislative intent underlying TEFRA. "The determination of the manner in which items . . . are allocated among the various partners in a partnership is one best made at the partnership level, because the allocation to one partner necessarily affects the allocation to another." *Id.* at 13. In contrast, the court noted, "once the partnership has determined the distributive share of a partner who happens to be in bankruptcy," *id.*, the subdivision of that partner's share of a partnership tax item between the partner as an individual and the partner's bankruptcy estate "will have no effect on the remaining partners," *id.* at 14.

After denying Taxpayer's motion to dismiss, the Tax Court went on to consider the merits of the dispute between Taxpayer and the Commissioner. The

court held that Taxpayer's allocation of the partnership losses between himself and his bankruptcy estate was improper, because all the 1990 losses should have been allocated to the bankruptcy estate. Hence, the loss carryovers for 1991, 1992, 1993, and 1994—which had been based on claims of portions of the 1990 losses on the tax returns for Taxpayer and his wife—were not valid, and there was a tax deficiency for three of these years.

Taxpayer and his wife appealed the Tax Court's decision to this court. Their brief explains that while they do not concede the merits of that decision, their sole ground for appeal is that the Tax Court erred in denying the motion to dismiss for lack of jurisdiction.

We reverse, holding that the Tax Court lacked authority to reallocate the losses because of the Commissioner's failure to conduct a partnership-level proceeding (except that we dismiss the appeal in Case No. 01-9010 on the ground that we lack jurisdiction because in that case the Tax Court ruled that there was no deficiency, *see W. W. Windle Co. v. Comm'r*, 550 F.2d 43, 45 (1st Cir. 1977)). We first discuss the Bankruptcy Regulation, which is the source of the Commissioner's principal argument on appeal. We then turn to the Commissioner's arguments in support of the Tax Court's reasoning.

## II. Discussion

"We review tax court decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *Kurzet v. Comm'r*, 222 F.3d 830, 833 (10th Cir. 2000) (quoting I.R.C. § 7482(a)(1)). The Tax Court's legal conclusions are subject to de novo review, and its factual findings can be set aside only if clearly erroneous. *Id.*

### A. The Bankruptcy Regulation

As mentioned above, the Commissioner argues that the Bankruptcy Regulation converts Taxpayer's share of 1990 partnership losses into nonpartnership items. The regulation states:

> Bankruptcy. The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

Treas. Reg. § 301.6231(c)-7T(a).

Under this regulation, items that would otherwise be partnership items are converted to nonpartnership items because the taxable year in which they arose is too intertwined with the bankruptcy proceeding. The taxable years so designated are those "ending on or before the last day of the latest taxable year of the partner

-10-

with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding." *Id.* It is not surprising that an argument could emerge regarding the meaning of such intricate language.

There is no question that the disputed items arose during the partnership year ending on December 31, 1990. What the parties do not agree upon is what was "the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding." If the last day of that taxable year was on or after December 31, 1990, then the regulation provides that the disputed items are to be treated as nonpartnership items.

The problem for the Commissioner is that 1989 (which, of course, ended on December 31, 1989—well before December 31, 1990) is the latest taxable year of Taxpayer for which the United States could file a claim in the bankruptcy proceeding. Because Taxpayer elected not to bifurcate his 1990 tax year into a pre-petition partial year and a post-petition partial year, his 1990 taxes were treated as a post-petition debt—a personal obligation not encompassed by the bankruptcy. *See In re Johnson*, 190 B.R. 724, 726 (Bankr. D. Mass. 1995); *In re Mirman*, 98 B.R. 742, 745 (Bankr. E.D. Va. 1989). The United States thus could not "file a claim . . . in the bankruptcy proceeding" for Taxpayer's taxes for 1990 and thereafter.

The Commissioner concedes that "the latest year for which the United States could file a claim for [Taxpayer's] liability is 1989." Aple. Br. at 27. He contends, however, that for purposes of the Bankruptcy Regulation, the bankruptcy estate must be identified with the partner who declared bankruptcy. The bankruptcy estate can continue to incur tax liability for the duration of the bankruptcy proceedings. Therefore, as the Commissioner points out, the IRS could file a claim in the bankruptcy proceedings for income tax liabilities incurred by the bankruptcy estate during the tax year 1990 (and thereafter, as long as the bankruptcy continued). Because that tax year ended on or after December 31, 1990, he concludes that the disputed partnership items converted into nonpartnership items under the regulation.

In support of his interpretation of the Bankruptcy Regulation, the Commissioner emphasizes a policy justification. He contends that severing a bankrupt partner from partnership-level proceedings promotes the efficient resolution of disputes between the IRS and the other partners. The filing of a bankruptcy petition effects a stay on "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." 11 U.S.C. § 362(a)(8). According to the Commissioner,"[i]f the tax liability of the debtor or the bankruptcy estate were still affected by a partnership proceeding, the stay imposed by the bankruptcy petition would halt the commencement or continuation

-12-

of the partnership proceeding, and would prevent the IRS and the remaining partners from litigating whether any adjustments were appropriate to the partnership return." Aple. Br. at 26. Moreover, he argues, even if the bankruptcy court lifted the stay, ongoing tax court proceedings might delay and complicate resolution of the bankruptcy proceeding.

The Commissioner may be right that public policy favors his reading of the Bankruptcy Regulation. Our task, however, is to interpret the regulation's language, not to decide public policy. And we are unable to read the words of the regulation as the Commissioner proposes.

In our view, it would require a gross distortion of the regulation's language to read the word "partner" to include the bankruptcy estate. That word appears four times in the regulation:

> The treatment of items as partnership items with respect to a **partner** named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a **partner** arising in any partnership taxable year ending on or before the last day of the latest taxable year of the **partner** with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the **partner** as debtor is filed in bankruptcy.

Treas. Reg. § 301.6231(c)-7T(a) (emphasis added). The first and fourth times that the word "partner" is used, the regulation expressly refers to the partner's status as a debtor. This is significant because, as Taxpayer emphasizes, the

-13-

debtor and the bankruptcy estate are distinct entities in an individual's bankruptcy proceeding. *See, e.g., In re Smith*, 235 F.3d 472, 477-78 (9th Cir. 2000) ("The Bankruptcy Code distinguishes between property of the estate in bankruptcy and property of the debtor. The commencement of a case under the Bankruptcy Code creates an estate and though the estate may acquire property after the commencement of the case, estate property remains distinct from the debtor's property.") (internal citations omitted); *Martin v. United States*, 159 F.3d 932, 934 (5th Cir. 1998) ("IRC § 1398 treats the bankruptcy estate as a separate entity [from the debtors] for tax purposes . . . ."). The first and fourth references to a "partner" thus cannot be construed as referring to the bankruptcy estate. Given that the second use of the word "partner" refers back to the preceding use ("partnership items of *such* a partner"), the second use also cannot be read to include the bankruptcy estate.

The remaining use of the word "partner" is the operative one for our purposes. The defining date for determining whether an item should be treated as a nonpartnership item is based on "the latest taxable year of *the partner* with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding." Here, too, the "partner" must be the debtor in bankruptcy. A common-sense rule of statutory construction states that "identical words used in different parts of the same act are intended to have the same

meaning." *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993) (internal quotation marks omitted). We think it is not asking too much of the drafters of our nation's laws to say that if they use a term three times in the same sentence, they should be sure that they intend to give it the same meaning each time. Accordingly, we agree with Taxpayer that the word "partner" does not encompass the bankruptcy estate and therefore the Bankruptcy Regulation does not convert his 1990 partnership losses into nonpartnership items.

B.  Tax Court Approach

The Commissioner also attempts to defend the Tax Court's ruling, which he paraphrases to say: "[T]he manner in which the distributive share of a partner in bankruptcy is allocated between the partner and the bankruptcy estate of that partner is not a 'partnership item' under IRC § 6231(a)(3), and need not be made at the partnership level." Aple. Br. at 30. He acknowledges that "the total amount of partnership losses for the year is determined at the partnership level, and the manner in which those losses are divided among the partners of each partnership is also a partnership item." *Id*. But he states that "[t]he regulation promulgated by the Secretary to define partnership items, Treas. Reg. § 301.623(a)(3)-1, does not address the possibility that one partner will file a bankruptcy petition during the taxable year." *Id*. at 31. According to the Commissioner, not only is there "no indication in the Regulation that the

allocation of a debtor-partner's loss between the debtor-partner and the bankruptcy estate is a partnership item," *id*., but neither does "general tax law require partnerships to take into account on the partnership return the fact that one partner has become a debtor in bankruptcy, and his partnership interest has become property of a bankruptcy estate," *id.* at 31-32.

Although the premises of the Commissioner's argument may well be true, his conclusion does not follow. First, the absence of a reference to bankruptcy in the regulation defining partnership items does not imply that there must be some sort of exception in that context. On the contrary, it indicates the general applicability of the regulation to bankrupt partners. Moreover, the Secretary's promulgation of a regulation (the Bankruptcy Regulation) specifically to provide for an exception to the general rule when a bankruptcy is involved strongly suggests that the existence of a bankruptcy would otherwise not be a reason to treat as a nonpartnership item what would be a partnership item under the general regulation.

Second, the rule regarding allocation of losses between the debtor-partner and the bankruptcy estate is a red herring. What is important is that the debtor was a partner during part of the partnership year, so the partnership returns must set forth the debtor's share of income, loss, etc. It may be that the partnership can report all such items as the debtor's, and need not prepare a K-1 for the

bankruptcy estate. And perhaps the proper tax treatment of the debtor's share of income and losses is to allocate all items to the bankruptcy estate. Nevertheless, the Commissioner has not challenged the proposition that the partnership return must contain an assignment of income and loss to a partner who has declared bankruptcy, whether the figures be $1 million or $0, and that these figures are partnership items unless excluded by a regulation. If a figure is wrong, it can be challenged only in a partnership-level proceeding.

To say that the *allocation* is not a partnership item is to confuse the process with the result. The statute requires partnership-level proceedings if a partnership item is being challenged. The partnership item is, of course, the result of the allocation of the partnership's income, losses, etc; but the allocation process itself is not a partnership item. The requirement of a partnership-level proceeding is triggered regardless of how the partnership item was calculated. There may be sound policy reasons for not requiring a full-blown partnership-level proceeding when an alleged error in one partner's return affects only one other taxpayer rather than all the partners. But for now the law is otherwise.

We **DISMISS** the appeal in Case No. 01-9010. In Case No. 01-9009 and Case No. 01-9011, we **REVERSE** the decision of the Tax Court and **REMAND** for proceedings consistent with this opinion. We express our appreciation to counsel for the fine appellate briefs.

**01-9009, 01-9010,01-9011,** *Katz v. Commissioner of Internal Revenue*
**ROBINSON** , District Judge, dissenting.


I join the court's opinion as to dismissal of Case No. 01-9010. I

respectfully dissent as to the court's opinion in Case No. 01-9009 and Case

No. 01-9011.

The Tax Court had jurisdiction to enforce the Notices of Deficiency

because there was not a "partnership item" at issue. The issue was whether the

net operating loss carryovers in years 1991-1994 were a tax attribute of

Taxpayer's bankruptcy estate in whole or part, or whether Taxpayer was entitled

to claim the total amount of these carryovers on his individual tax returns. This

was a dispute between Taxpayer and the bankruptcy estate, and an issue personal

to Taxpayer. Thus, the majority mischaracterizes the Commissioner's

"adjustments" to Taxpayer's tax liability as a partnership or affected item.

Although the Commissioner "adjusted" Taxpayer's liability, it was an adjustment

that was personal to Taxpayer and in no way affected the liability or K-1s of the

other partners in the partnership.

Had the net operating loss carryovers been a "partnership item," the Tax

Court would not have had jurisdiction, for the issue would have necessarily been

resolved at a partnership-level proceeding. The Internal Revenue Code states that

> The term "partnership item" means, with respect to a partnership, any
> item required to be taken into account for the partnership's taxable
> year under any provision of subtitle A to the extent regulations
> prescribed by the Secretary provide that, for purposes of this subtitle,

such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. § 6231(a)(3).

The dispute between Taxpayer and the bankruptcy estate about their rights to claim the net operating loss carryovers in 1991-1994 is not an item that was required to be taken into account by the partnership, either in 1990, the year in which the partnership sustained the loss, or in the subsequent years 1991-1994. While the partnership was required to take into account the distributive shares of the partners in the loss sustained in 1990, the partnership was not required to take into account a single partner's dispute with a third party over claiming the net operating loss carryovers generated by the loss.

Nor is this dispute between Taxpayer and his bankruptcy estate an item that is more appropriately determined at the partnership level than at the partner level. Partnership-level proceedings are generally required when there is a determination of an issue that affects the partners or partnership. A partnership-level proceeding is necessary to work out the competing, disputed or relative rights of the partners when those issues are dependent on or affect the rights of the other partners. [1]

---

[1]Nor is the issue in this case an "affected item" within the meaning of I.R.C. § 6231(a)(5), which is defined as "any item to the extent such item is affected by a partnership item." Treas. Reg. § 301.6231(a)(5)-1(a) includes as

(continued...)

In this case, there was no dispute about the amount of losses by the partnerships or about the partners' relative shares of the partnership losses. Unlike several of the cases cited by the majority, there was no partnership-level proceeding pending because there was no dispute among or affecting the partners. Taxpayer and the partners do not dispute that the K-1s reflected the correct amounts of their respective distributive shares under the partnership. Whether or not the net operating loss carryover in this case is a tax attribute that benefits Taxpayer or the bankruptcy estate has absolutely no effect on Taxpayer's partners.

The regulation promulgated by the Secretary to define partnership items, Treas. Reg. § 301.6231(a)(3)-1, provides general categories of partnership items and is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Examples of partnership items are the partnership and each partner's

---

[1](...continued)
affected items those "unrelated to the items reflected on the partnership return." To be sure, the Taxpayer's tax liability is affected by a determination that the net operating losses are wholly or partially a tax attribute belonging to the bankruptcy estate. But, "affected items" are items that require adjustment after and as a consequence of a determination that is necessarily made in a partnership-level proceeding. Affected items include computational adjustments to a partner's tax liability, after a partnership proceeding results in a change in a partnership item. Examples of affected items include a partner's basis in the partnership and penalty, addition to tax or additional amount. Treas. Reg. § 301.6231(a)(5)-1(b) and (e).

share of: income, gain, loss, deduction and credit, exempt income, nondeductible expenses, partnership liabilities, determinations requiring the partnership's books and records, contributions, distributions. Treas. Reg. § 301.6231(a)(3)-1(a) and (c). Partnership items also include the accounting practices and the legal and factual determinations that underlie the determination of amount, timing, and characterization of items of income, credit, gain, loss and deduction. Treas. Reg. § 301.6231(a)(3)-1(b). In fact, the hallmark of a partnership item is that it affects the distributive shares reported to other partners. *Blonien v. Comm'r*, 118 T.C. 541, 551-552 n. 6 (U.S. Tax Ct. 2002). In contrast, non-partnership items include items personal to the partner. *See Hambrose Leasing 1984-5 Ltd. Partnership v. Comm'r*, 99 T.C. 298 (U.S. Tax Ct. 1992)(amounts that the partners have "at risk" with respect to partnership liabilities assumed under I.R.C. § 465); *Crop Associates-1986 v. Comm'r*, 113 T.C. No. 15 (U.S. Tax Ct. 1999)(equitable recoupment).

Because the dispute between Taxpayer and his bankruptcy estate does not involve a partnership item, the Bankruptcy Regulation cited by the majority, Treas. Reg. § 301.6231(c)-7T(a), is inapplicable. The majority's conclusion that the Bankruptcy Regulation has "general applicability" to bankrupt partners ignores the plain language of the regulation, which is limited to treatment of partnership items. Nothing in the Bankruptcy Regulation states that all

determinations of whether the debtor or the bankruptcy estate has the benefit of certain attributes are partnership items. Nor does the Bankruptcy Regulation subject every issue to a partnership-level proceeding simply because a bankruptcy was filed. Thus, the applicability of the Bankruptcy Regulation to the particular facts in this case is irrelevant. Moreover, the Commissioner's ruling was in error; there is no statutory or regulatory basis for his ruling that the filing of a bankruptcy operates to convert all items (whether partnership items or not) into "non-partnership items."

Because the Bankruptcy Regulation does not apply in this case, the majority's analysis of the last day the IRS could file a claim is of no consequence. Also of no consequence is the majority's analysis that the Bankruptcy Regulation cannot be read to include the bankruptcy estate in the word "partner." In fact, the majority is correct that "partner" does not include bankruptcy estate in its definition. The bankruptcy estate was not a partner. It did not sign a partnership agreement. It did not have a right to a distributive share. It was not in existence at the time of the partnership agreement. Whatever rights it has are by operation of bankruptcy law, and this is not a matter that can or should be resolved in a partnership-level proceeding.

The amount of the net operating loss carryovers is a given; the only dispute is how much of that amount is attributed to the benefit of Taxpayer and how much

is attributed to the benefit of the bankruptcy estate. In fact, the majority makes the argument when they posit that:

> To say that the *allocation* is not a partnership item is to confuse the process with the result. The statute requires partnership level proceedings if a partnership item is being challenged. The partnership item is, of course, the result of the allocation of the partnership's income, losses, etc; but the allocation process itself is not a partnership item.

Majority opinion at 17 (emphasis in the original).

What is at issue here is the allocation process between Taxpayer and his bankruptcy estate. The "allocation of the partnership's income, losses, etc," is not at issue. The partnership's income and losses have been allocated, resulting in partnership items, that is, the relative allocation between the partners. But Taxpayer does not dispute the partnership items. Taxpayer does not dispute the losses attributed to his share of the partnership, nor does the Commissioner dispute the losses attributed to Taxpayer's share of the partnership. Taxpayer and the Commissioner dispute the allocation process of an undisputed amount of loss and net operating loss carryovers, as between Taxpayer and a third party, the bankruptcy estate. This is not a matter to be determined at the partnership level– it is a matter of bankruptcy law, with no effect or consequence on the partnership or the other partners. [2]

---

[2] Although not controlling, I find persuasive the reasoning of *Doe v.*

(continued...)

-6-

For these reasons, I would affirm the decision of the Tax Court.

---

2(...continued)
*Comm'r*, 116 F.3d 1489, 1997 WL 355357 (10th Cir. June 2, 1997) (unpublished). *See* 10th Cir. R. 36.3(B). The court in *Doe* concluded that the Tax Court had jurisdiction to assess certain deficiencies at the individual level in a proceeding involving a subchapter S corporation, which, like a partnership, is taxed through individual shareholders. The court noted that if the Commissioner's determination of a deficiency owed by an individual taxpayer is based upon information set forth in the original partnership or shareholder return rather than on the Commissioner's own investigation, re-calculation and re-determination of a partnership item or subchapter S item, then the Tax Court retains jurisdiction to adjudicate the deficiency in an individual proceeding, because there is no "adjustment" to the entity's return and thus no need to follow the entity-level procedures. *Doe*, 1997 WL at 6-10.