**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JAMES WILLIAM AVERY,

    Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 23-9004
(CIR No. 23237-18L)
(U.S. Tax Court)

_____

### ORDER AND JUDGMENT*
_____

Before **HARTZ**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.

_____

Petitioner James William Avery is an attorney appearing on his own behalf.

He appeals the judgment of the United States Tax Court, which held that Mr. Avery

could not claim monies spent on car-racing activities as ordinary and necessary

business expenses to promote his law practice. We have jurisdiction under 26 U.S.C.

§ 7482, and we affirm.

---

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    BACKGROUND & PROCEDURAL HISTORY

Mr. Avery has been a solo practitioner in Colorado since the 1980s.  His practice has focused mostly on representing plaintiffs in personal-injury cases.  In 2003, he married and moved to Indiana, the home of his new spouse.  Although he became licensed to practice law in Indiana, essentially all his business continued to come from Colorado, so he traveled back and forth as needed.

In 2005, Mr. Avery tried to develop more business in Indiana by attending and participating in car shows there.  Eventually, however, he became more interested in road racing and learned to be a race car driver.  He bought a Dodge Viper and placed "[a] decal for the Avery Law Firm, his 'sponsor,' . . . on the back tail of the car." App. at 9.  He then "competed in road racing events at tracks in Indiana, Ohio, Wisconsin, Missouri, Pennsylvania, New York, Colorado, and other venues." *Id.*  He "believed that being involved in car racing might enable him to meet lawyers, doctors, and other professionals who could help his career." *Id.* at 10.  In 2010, he separated from his wife, moved back to Colorado, and stopped racing due to lack of funds.

From 2008 to 2013, Mr. Avery was an inconsistent tax filer.  In 2016, the IRS began re-examining his tax liabilities for those years.  This prompted Mr. Avery to submit returns for the years 2008, 2009, and 2013 (he had not previously filed returns for those years) and to submit amended returns for 2010, 2011, and 2012.  With each of those returns, he submitted a Schedule C to document the income and expenses of his law practice, claiming between $50,000 and $70,000 in business expenses.  For

2

the years 2008 through 2011, Mr. Avery included amounts spent on his race car in those Schedule C business expenses.

The IRS mailed deficiency notices to Mr. Avery, but he did not respond. Eventually the IRS began a formal collection action, seeking close to $1 million in past-due taxes and penalties. This calculation was based in part on the IRS's rejection of his late-submitted and amended returns. As relevant here, the IRS rejected all business expenses Mr. Avery claimed on his Schedules C.[1]

As the collection action progressed, the IRS's Independent Office of Appeals refused to consider Mr. Avery's challenge to its calculations because Mr. Avery had not responded to the IRS's deficiency letters. *Cf.* 26 U.S.C. § 6330(c)(2)(B) (allowing the taxpayer to "challenge[] . . . the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability"). After some unsuccessful back-and-forth about settlement, Mr. Avery appealed to the Tax Court.

The Tax Court held a trial in Mr. Avery's case in February 2022. The court found Mr. Avery had not received the deficiency letters the IRS had mailed to him before the collection action began, meaning Mr. Avery could still challenge the IRS's calculations.[2] The court also determined that some of Mr. Avery's business expenses,

---

[1] Later, it became clear the IRS accepted Mr. Avery's late-submitted 2009 return. Neither party makes anything of this fact, so we will not discuss it further.

[2] The Tax Court found as much because the Commissioner conceded non-receipt.

3

unrelated to racing, were legitimate. For reasons we will discuss, however, the Tax Court concluded Mr. Avery's racing expenses were not "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," 26 U.S.C. § 162(a). The court therefore disallowed the deduction of those expenses.

Following posttrial proceedings about the precise amount of Mr. Avery's liabilities in light of these rulings, the court entered a final order assessing past-due taxes and penalties of approximately $550,000. This appeal timely followed.

## II.    ANALYSIS

This court reviews Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). "The Tax Court's legal conclusions are subject to de novo review, and its factual findings can be set aside only if clearly erroneous." *Katz v. Comm'r*, 335 F.3d 1121, 1126 (10th Cir. 2003).[3]

---

[3] Following the Tax Court trial, Mr. Avery did not submit a posttrial brief. The Commissioner urges us to hold that this failure amounts to waiver of any objection to the Tax Court's decision. The Commissioner cites only the Tax Court's own rules and decisions, under which the Tax Court itself might find that such nonparticipation amounts to waiver (although the Tax Court chose to disregard the waiver in Mr. Avery's case). Assuming failure to file a posttrial brief in the Tax Court amounts to waiver in this court, there is no suggestion this would raise a jurisdictional issue. We thus have discretion to disregard it. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179 n.8 (10th Cir. 2005). We choose to do so here and proceed to the merits.

## A.    Deductibility of Racing Expenses

Mr. Avery first claims the Tax Court considered an impermissible factor—his enjoyment of car racing—when it decided whether his racing expenses were deductible.  To evaluate this argument, we begin by quoting the Tax Court decision at length.

The Tax Court began by summarizing the relevant standards for judging whether a claimed deduction is an ordinary and necessary business expense:

> A taxpayer must show, not only that he incurred the item in question, but also that it was an ordinary and necessary expense of the particular business in which he was engaged.  An expense is ordinary if the transaction which gives rise to it is of common or frequent occurrence in the type of business involved.  A necessary expense is one that is appropriate and helpful in carrying on the taxpayer's profit-seeking activity.
>
> In determining whether an expense is ordinary and necessary within the meaning of section 162(a), the courts have focused on the taxpayer's primary motive for incurring the expense and on whether there is a reasonably proximate relationship between the expense and the taxpayer's occupation.  If an expenditure is primarily motivated by personal considerations, no deduction is allowed.

App. at 15 (citations, brackets, and internal quotation marks omitted).  Mr. Avery does not claim any of this is incorrect.[4]  From Mr. Avery's perspective, rather, the Tax Court's error lies in the next paragraph of its decision:

---

[4] Mr. Avery claims in a footnote, however, that "[t]he Tax Court incorrectly maintained the burden of proof on [him]."  Pet'r Opening Br. at 10 n.6.  He does not develop this argument.  We therefore will not address it.  *See Eizember v. Trammell*,

> We agree with [the Commissioner] that [Mr. Avery's] racing-related costs were not ordinary and necessary expenses of his business as an attorney. It is neither "necessary" nor "common" for attorneys to incur such costs. [Mr. Avery] greatly enjoyed car racing, which he found more exciting than his previous hobby of acquiring collector cars and participating in car shows. But we find that both activities were hobbies. No deduction is allowed for personal expenses of this kind.

App. at 15. The Tax Court then proceeded to give several reasons in support of this conclusion, such as the disconnect between the location of Mr. Avery's races compared to the location of his law practice.

Mr. Avery argues the Commissioner and the Tax Court should not be allowed to consider a taxpayer's enjoyment of a marketing activity as part of the ordinary-and-necessary analysis. He claims "[the] subjective nature of this 'test' is unduly vague and denies the taxpayer the reasonable notice of the bases for the deduction, creating a situation where an 'after the fact judgment call' is made by the Commissioner (and in this instance, the Tax Court in review)." Pet'r Opening Br. at 14. This could lead, he posits, to a situation where expenses incurred in maintaining what is otherwise indisputably a work vehicle will be deemed by the Commissioner to be personal expenses simply because the owner enjoys driving the vehicle.

This appears to be a legal argument—a claim that the Tax Court's legal standard is flawed—which we presumably review de novo, *see Katz*, 335 F.3d

---

803 F.3d 1129, 1141 (10th Cir. 2015) ("[T]his court has repeatedly instructed that stray sentences like these are insufficient to present an argument . . . .").

at 1126. But Mr. Avery cites no authorities in support of this argument. Given his invocation of concepts such as vagueness and notice, he seems to allude to the Fifth Amendment's due process clause, but we have no obligation to liberally construe a pro se attorney's pleadings, *see Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

It is not obvious to us that the Tax Court's statement about Mr. Avery's enjoyment of car racing was a factor it considered in the ordinary-and-necessary analysis, as opposed to a passing observation (one that mentioned his car-show activities as well). But even if we read the Tax Court's decision as Mr. Avery does, we see no error in considering personal enjoyment as one factor among others. Again, Mr. Avery cites no authority supporting his position. Also, as noted above, the Tax Court's standard (which Mr. Avery does not challenge) looks to "the taxpayer's primary motive for incurring the expense." App. at 15. Mr. Avery's enjoyment of the activity for which he incurred expenses is relevant to his primary motive. As long as personal enjoyment remains one factor among others, we see no realistic threat of the situation he posits, where the Tax Court disallows otherwise legitimate business expenses related to a work vehicle solely because the owner enjoys driving it. We therefore reject this argument.

## B.    Lack of Remand to the IRS Independent Office of Appeals

Mr. Avery next argues that the Tax Court should have remanded the matter to the Independent Office of Appeals so the parties could again discuss possible settlement—this time in light of his true liability calculations, not the calculations the appeals office originally insisted upon. The full procedural history shows, however,

that Mr. Avery gave up this opportunity by failing to participate fully in posttrial proceedings.

The Tax Court's decision concluded by observing the Commissioner—not Mr. Avery—had requested remand to the appeals office for further settlement talks in light of the court's conclusions. The court stated, "We will grant that request. . . . An appropriate order will be issued." App. at 20–21 (italics removed). That subsequent order stated it was "desirable for the parties to agree on [Mr. Avery's] aggregate tax liability for 2008–2013 . . . before the case is remanded." Suppl. App. at 120. The court therefore directed the parties "to file a status report in which they express their agreement as to what [Mr. Avery's] aggregate underlying liability for 2008–2013 would be—including tax, additions to tax [*e.g.*, penalties], and interest—if calculated in accordance with the Court's Opinion." *Id.*

The parties conferred and Mr. Avery then filed a status report, explaining:

> Petitioner lacks the ability or assistance of [an] accountant to compute the calculations and does not waive any objection to the penalties or other assessments. Petitioner believes the calculations are improper and a violation of his due process for failure of the Tax Court Appeals section to consider his objections and Offer in Compromise.[5] There is nothing to discuss based on Petitioner's position.

*Id.* at 126. The Tax Court responded with an order giving Mr. Avery an additional thirty days to reach an agreement with the Commissioner about his liability

---

[5] This appears to be a reference to the fact that he did not reach a settlement with the appeals office before he sought Tax Court review. In the next subsection, we address his theory that the appeals office violated due process.

calculations.  Barring that, the Tax Court required the parties to submit their separate calculations and the court would enter its final decision.  The court did not explain how it would reconcile the parties' calculations if they could not agree.  That turned out to be a moot point, however, because Mr. Avery neither came to an agreement with the Commissioner nor submitted his own calculations for final decision.  The Commissioner, for its part, submitted calculations, which the Tax Court adopted and incorporated into its final decision.

In short, Mr. Avery never made a remand request and the Tax Court conditioned the Commissioner's remand request on the parties' agreement about Mr. Avery's liabilities in light of the court's decision.  Mr. Avery failed to participate in that process, so the Tax Court's entry of a final decision rather than ordering a remand was not error.

### C.    Effect of Delay

Mr. Avery's final argument relies on the appeals office's total disallowance of the Schedule C business expenses claimed in his late-submitted and amended returns. He calls this "an abuse of authority" that delayed the resolution of his tax liabilities by several years (*i.e.*, the time it took for the Tax Court to resolve his challenge), in turn leading to additional liabilities, such as more interest and larger penalties.

Pet'r Opening Br. at 17.  He claims there should be an "adjustment for the due process rights violations." *Id.*[6]

Mr. Avery cites no authority for the idea that the appeals office's behavior amounted to a due-process violation, nor that tax liabilities may be "adjusted" on the basis he claims.  We therefore do not address this theory further.  *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("Recitation of a tale of apparent injustice may assist in [demonstrating error], but it cannot substitute for legal argument.").

## III.   CONCLUSION

We affirm the Tax Court's decision.

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[6] Mr. Avery repeatedly claims the Tax Court itself found the appeals office had violated due process and abused its discretion.  *See* Pet'r Opening Br. at 2–3, 4–5, 8, 16 n.10.  The Tax Court made no such findings.  It merely found—based on the Commissioner's concession—that Mr. Avery had not received the IRS's deficiency letters, contrary to what the appeals office believed.