FILED
United States Court of Appeals
Tenth Circuit

January 5, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEAN MATHIA, Personal
Representative of The ESTATE OF
DOYLE V. MATHIA, Deceased,

Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

Respondent-Appellee.

No. 10-9004

---

**ON APPEAL FROM THE UNITED STATES TAX COURT,**
**THE HONORABLE L. PAIGE MARVEL**
**(CIR-1:16483-05L)**

---

Jonathan E. Boatman, McAfee & Taft, P.C., Oklahoma City, Oklahoma (James R.
Webb, Alan G. Holloway, and Michael K. Avery, McAfee & Taft, P.C.,
Oklahoma City, Oklahoma, and Mark W. Curnette, Logan & Lowry, LLP, Vinita,
Oklahoma, with him on the briefs), for Petitioner-Appellant.

Andrew M. Weiner (Gilbert S. Rothenberg, Acting Deputy Assistant Attorney
General, and Kenneth L. Greene, Attorney, with him on the brief), Tax Division,
Department of Justice, Washington, District of Columbia, for Respondent-
Appellee.

---

Before **LUCERO**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Jean Mathia is the widow of Doyle Mathia, a limited partner in Greenwich Associates. Greenwich was a partnership that incurred losses that were passed through to the couple's income tax returns for the years 1982–84. After an investigation of numerous related tax shelters, the Commissioner of Internal Revenue disallowed these losses and in 2003, following lengthy administrative and judicial proceedings involving the partnership, assessed more than $150,000 against Mathia. Mathia appealed to the United States Tax Court, challenging the assessments as untimely and asserting the government bore the burden of proof in establishing timeliness. The Tax Court denied the appeal and the case now comes to us.

Mathia contends the tax assessments were untimely because the relevant statute of limitations had run. This contention turns on whether Doyle Mathia entered into a settlement agreement under the tax code that resolved his partnership tax liability on an individual basis, separate from the partnership-level proceeding. We agree with the tax court that he entered into no such agreement which would qualify under the tax code as a settlement of Mathia's liability as an individual partner. Therefore, we conclude the assessments were timely and properly applied by the IRS. We also find the district court correctly assigned the burden of proof to Mathia.

Accordingly, we AFFIRM.

# I. Background

## A. *Partnership Taxation*

Before considering the facts of this case, a review of several basic partnership tax principles is helpful. As a general matter, partnerships are pass-through entities that do not themselves pay federal income tax. I.R.C. § 701; *see also Katz v. Comm'r of Internal Revenue*, 335 F.3d 1121, 1123 (10th Cir. 2003). All income, deductions, and credits are allocated among individual partners.

Before 1982, partnership proceedings, both administrative and judicial, were conducted at the level of the individual partner. *See Crnkovich v. United States*, 202 F.3d 1325 (Fed. Cir. 2000). This individualized process created inefficiencies, however, because the IRS was required to conduct distinct, and potentially duplicative, investigations for each partner in a partnership. Likewise, the IRS generally could not enter into settlements at the partnership-level; agreements had to be executed on an individual basis.

Congress responded to these issues by enacting the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324. TEFRA's partnership provisions, I.R.C. §§ 6221–6233, streamlined partnership taxation by requiring resolution of "partnership items"—items, according to regulations, that are appropriately determined at the partnership level rather than at the partner level—in a single, unified audit and judicial proceeding. *See* I.R.C. § 6221

("Except as otherwise provided in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level."); *see also id.* § 6231(a)(3) (partnership items include "any item required to be taken into account for the partnership's taxable year"). Thus, "TEFRA generally requires determination of the tax treatment of partnership items at the partnership level . . ." before assessments are made at the individual partner level. *AD Global Fund, LLC ex rel. N. Hills Holdings, Inc. v. United States*, 481 F.3d 1351, 1355 (Fed. Cir. 2007). A partnership must file an information return (Form 1065, U.S. Return of Partnership Income) each year reporting items of income, deduction, and credit, and these items are then allocated among the partners who individually bear the tax consequences for them.[1] *See Crnkovich*, 202 F.3d at 1328; *see also* I.R.C. §§ 702, 6031.

TEFRA is intended to facilitate efficient, partnership-level administrative and judicial proceedings. To commence a partnership-level administrative proceeding under TEFRA, the Commissioner must issue a Notice of the Beginning of an Administrative Proceeding (NBAP) to the tax matters partner[2]

---

[1] The allocation to each partner is reported on a Schedule K-1 to the partnership's Form 1065 return, and the partner must report his or her distributive share of these partnership items. I.R.C. § 701.

[2] A partnership designates a tax matters partner to handle tax questions on behalf of the partnership. The tax matters partner is empowered to settle tax disputes on behalf of the partnership and, in some cases, on behalf of individual partners as well.

and all other "notice" partners—partners whose "name and address is furnished to the Secretary [of the Treasury]"—each of whom may participate in the proceeding. *See* I.R.C. §§ 6223(a) (notice requirements for NBAPs); 6231(a)(8) (notice partner is any partner entitled to notice under § 6223(a)). If the IRS ultimately disagrees with any reported partnership item, it may adjust items reported on the partnership's Form 1065 by mailing a Final Partnership Administrative Adjustment (FPAA) to the tax matters partner and all notice partners. *Id.* §§ 6223(a)(2), 6223(d)(2), 6225(a).

Upon receiving an FPAA, a partnership, via its tax matters partner, may file a petition in the Tax Court, a federal district court, or the Court of Federal Claims contesting the adjustments. *Id.* § 6226(a). Once an FPAA is sent, the IRS cannot make any assessments attributable to relevant partnership items during the time the partnership seeks review and, if a § 6226 proceeding is brought in the Tax Court, until one year after the Court's decision becomes final. *Id.* § 6225(a). Every partner with an interest in the administrative proceeding is treated as a party to that proceeding and is bound by its outcome absent an agreement to the contrary. *See id.* § 6226(c). With this in mind, we turn to the Mathias' situation.

**B. Facts**

The facts are undisputed. Appellant Jean Mathia and her now-deceased husband, Doyle Mathia, were married and filed joint tax returns for all years relevant to this case. Doyle Mathia was a limited partner in Greenwich

-5-

Associates, a New York limited partnership subject to partnership procedures under TEFRA. Mathia owned an 8.5% interest in Greenwich, which was one of approximately 50 identically structured coal-related partnerships and joint ventures sponsored by the Swanton Corporation (the Swanton partnerships). Thirty of the Swanton partnerships were formed before the enactment of TEFRA. The remaining 20, including Greenwich, were formed after the enactment of TEFRA and are subject to TEFRA's unified audit and litigation provisions applicable to partnerships.

In the late 1980s, the Commissioner investigated the Swanton partnerships, including Greenwich, and determined they existed solely to generate tax deductions for their partners. In 1987, Greenwich received a timely notice of the beginning of an administrative proceeding for tax years 1982–84, and in 1990 the Commissioner issued to Greenwich an FPAA stating the losses declared in association with the Greenwich partnership would be disallowed. In response, Greenwich's tax matters partner, Kevin Smith, filed an objection in the Tax Court and sought reconsideration. In the ensuing litigation, Greenwich was represented by Zapruder & Odell, a law firm that served as counsel for most of the Swanton partnerships subject to TEFRA.

In September 1991, the Commissioner and Zapruder & Odell reached an agreement in principle regarding 19 of the 20 Swanton TEFRA partnerships, including Greenwich. The agreement, which was reflected in a series of letters

between Zapruder & Odell and the Commissioner's attorneys, set forth terms for the resolution of the disallowed losses, and it required that any final settlement and entry of judgment bind all partnerships and, by extension, each individual partner.

In the wake of the agreement in principle, the Commissioner began applying the terms of the settlement to individual partnerships and partners. To do this, the IRS gathered information enabling it to calculate partnership-level adjustments and each partner's distributive share adjustment. The IRS also began preparing decision documents memorializing the terms of the proposed settlement for each Swanton partnership subject to TEFRA.

Since the 1991 agreement in principle was not yet complete, the parties continued to negotiate aspects of the proposed settlement. For example, in a 1993 letter, the Commissioner informed the partners that, because the Commissioner had not received all tax returns for Greenwich, he could not determine whether any issues prevented computation of the settlement amount. And later in 1993, the Commissioner sent Zapruder & Odell a document setting forth "Terms of Settlement."

In 1995, the Commissioner sent a "Stipulation of Settlement Agreement" to Greenwich (Greenwich Stipulation) memorializing the parties' agreement with respect to Greenwich. The Greenwich Stipulation set forth adjustments to Greenwich's partnership items for tax years 1982–84. To be valid, the document

had to be signed by Greenwich (via Smith, its tax matters partner) and the IRS. In 1996, Smith signed the Stipulation and submitted it to the IRS, but, for reasons not apparent in the record, the Commissioner neither signed nor returned the Stipulation to Smith. Doyle Mathia died in 2000.

In 2001, the Commissioner sent an identical, unsigned, Greenwich Stipulation to Greenwich, and this time both parties signed the document. The Stipulation was filed with the Tax Court on August 31, 2001, pursuant to Tax Court Rule 248(a). *See* Ex. 29-J (Greenwich Stipulation) ("Pursuant to Rule 248(a) of the Tax Court Rules of Practice and Procedure, it is ORDERED AND DECIDED: That the following statement shows the adjustments to the partnership items of Greenwich Associates . . . .").

Receiving no objections to the Stipulation, the Tax Court accepted the settlement and entered its decision. Ninety days later, on April 17, 2002, the court's decision became final. In September 2002 and January 2003, the IRS issued notices of computational adjustment reflecting taxpayers' deficiencies and interest owed for 1982–84, based on the Greenwich Stipulation's agreed-upon figures, as entered by the Tax Court. And on January 27, 2003—within one year of the Tax Court's final decision in the partnership-level proceeding—the IRS issued the assessments. The Mathias paid deficiencies of $149,360, $4,015, and $2,331 for the years 1982, 1983, and 1984, respectively, but they paid none of the

interest due. The IRS subsequently denied Jean Mathia's request for an abatement of the interest.

The IRS then sought to recover the unpaid interest. In 2004, the Commissioner issued a final notice of intent to levy the interest, a notice of federal tax lien filing, and notices of Mathia's right to a Collection Due Process (CDP) hearing, which she was entitled to under I.R.C. §§ 6320 and 6330. At the CDP hearing, Mathia argued to the IRS's Appeals Office that the assessments were untimely, because they were filed more than one year after both the agreement in principle and the execution of the Greenwich Stipulation.[3] The court disagreed and found the assessments were timely made within one year of the Tax Court's decision becoming final in the partnership-level proceeding.

Mathia petitioned the Tax Court to review the assessments and the determinations at the CDP hearings. The court affirmed the assessments were timely and rejected Mathia's contention that the interest should have been abated. *See Mathia v. Comm'r of Internal Revenue*, T.C. Memo. 2009-120, 2009 WL 1471716 (U.S. Tax Ct. May 27, 2009). Finally, the Tax Court denied Mathia's motion to shift the burden of proof to the Commissioner under I.R.C. § 7491(a). Mathia now appeals. We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1).

---

[3] In parallel proceedings, Mathia sought not only to avoid paying the interest, but she also sought reimbursement of the deficiencies already paid.

## II. Discussion

Mathia contends (1) the Commissioner's assessments were untimely, and (2) the Tax Court erroneously denied her motion to assign the burden of proof to the Commissioner. In considering these issues, we review legal questions de novo and factual questions for clear error. *See Jones v. Comm'r of Internal Revenue*, 560 F.3d 1196, 1199 (10th Cir. 2009). Because this case involves mixed questions of law and fact, and because the factual record is stipulated, our review is de novo.

### A. *Timeliness of Assessments*

Mathia contends the IRS's assessments were untimely because they were levied more than one year after the execution of a "settlement agreement" pursuant to I.R.C. § 6231(b)(1)(C). This argument is unavailing because Mathia never entered into an individualized agreement with the IRS, and the IRS timely issued the assessments within one year of the Tax Court's decision becoming final.

### 1. Settlement Agreements and Statutes of Limitations

Whether the assessments were timely depends on how the 1991 agreement in principle and the executed Greenwich Stipulation are characterized. Under TEFRA, the IRS may enter into a settlement agreement with a partnership or an individual partner. In the ordinary case, TEFRA calls for the IRS to resolve partnership tax issues at the partnership level, and partnerships may enter into

-10-

partnership-level settlement agreements.  *See* I.R.C. § 6221 (providing for determination of tax liability of partnership items on a partnership-wide basis). The default is that settlement agreements entered into by a partnership bind all individual partners, including non-notice partners.[4]  *Id.* § 6224(c)(3) (providing that a non-notice partner will be bound by any settlement agreement in which the tax matters partner states expressly that the agreement will bind the other partners).

In certain circumstances, however, a settlement agreement between the IRS and an individual partner may carve out partnership items for resolution outside the context of a partnership-wide proceeding.  *See Crnkovich*, 202 F.3d at 1328–29.  This enables individual partners to resolve their differences with the IRS notwithstanding proceedings involving the partnership or other partners. When a partner enters into a settlement agreement individually, he removes himself from the partnership proceeding and allows the Commissioner to resolve his tax liability on an individual basis.  In this circumstance, the partner is subject to dismissal from the partnership-level proceeding.  I.R.C. §§ 6226(d)(1)(A), 6231(a)(4), 6231(b)(1)(C).

---

[4]  If a partner wants to ensure that a partnership-level settlement by the tax matters partner will not be binding on him, the partner may file a statement with the IRS to that effect.

Internal Revenue Code § 6231(b) details the various methods by which partnership items are reclassified as nonpartnership items and resolved on the partner level. Our concern is with the third method:

> (1) In general. For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date—
>
> (A) the Secretary mails to such partner a notice that such items shall be treated as nonpartnership items,
>
> (B) the partner files suit under section 6228(b) after the Secretary fails to allow an administrative adjustment request with respect to any of such items,
>
> (C) *the Secretary enters into a settlement agreement with the partner with respect to such items*, or
>
> (D) such change occurs under subsection (e) of section 6223 . . . or under subsection (c) of this section.

I.R.C. § 6231(b) (emphasis added).

The relevant provision here, § 6231(b)(1)(C), deems that an individual partner's partnership items become nonpartnership items when there is a settlement agreement "*with the partner* with respect to such items" (emphasis added). This provision recognizes individual partners may opt out of a partnership-level proceeding by entering into a settlement agreement with the IRS with respect to the determination of their individual partnership items. Thus, the plain terms of the statute signify that a § 6231(b)(1)(C) "settlement agreement" is

-12-

a bilateral compact between the IRS and an *individual partner* who opts out of a partnership-level proceeding.[5]

Section 6231(b)(1) is important for Mathia's appeal because which statute of limitations applies depends on whether partnership items were converted to nonpartnership items. Internal Revenue Code § 6501(a) provides the default three-year statute of limitation for assessment and collection of taxes: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ." *See also* I.R.C. § 6229(a) (limitations period for such assessments "shall not expire before the date which is 3 years after" the filing of the partnership's return or the return's due date, whichever is later). But if a taxpayer challenges an FPAA, I.R.C. § 6229(d) suspends the default limitations period, allowing the IRS to make assessments until one year after the date the decision in the Tax Court proceeding becomes final. A decision becomes final 90 days after it is entered. *Id.* § 7481(b).

If, however, relevant partnership items have become nonpartnership items pursuant to § 6231(b), there is a special assessment period under I.R.C.

---

[5]  Mathia argues it is significant for this case that a tax matters partner may enter into a § 6231(b)(1)(C) settlement on behalf of an individual partner. While this is true (and the Commissioner concedes the point), it does not follow that any settlement entered into by a tax matters partner is a "settlement agreement" pursuant to § 6231(b)(1)(C). Indeed, concluding a tax matters partner *can* enter into a § 6231(b)(1)(C) settlement does not answer the question of *whether* the tax matters partner in fact entered into any such settlement.

§ 6229(f)(1). That period does not expire until one year after partnership items become nonpartnership items:

> If before the expiration of the period otherwise provided in this section for assessing any tax imposed by subtitle A [i.e., income taxes] with respect to the partnership items of a partner for the partnership taxable year, such items become non-partnership items by reason of 1 or more of the events described in subsection (b) of section 6231, the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) *shall not expire before the date which is 1 year after the date on which the items become non-partnership items*.

*Id.* § 6229(f)(1) (emphasis added). In other words, partnership items become nonpartnership items on the date the IRS enters into a settlement agreement with an individual partner with respect to those items, and the one-year statute of limitations runs from that date. *Id.* § 6231(b)(1). So for our purposes, the nature and character of the Greenwich agreements is dispositive.

## 2. Greenwich Agreements

The Tax Court decision implementing the Greenwich Stipulation became final in April 2002. Given this, and so long as Mathia did not enter into a separate closing agreement with the IRS, the Commissioner's January 2003 assessment against Mathia was timely because § 6229(d) suspends the limitation period to allow the IRS to make assessments until one year after the Tax Court's decision becomes final. The outcome would be different, however, if Greenwich's partnership items attributable to Mathia were reclassified at any

-14-

point as nonpartnership items.  If this were the case, the assessments would be untimely because they were not made within one year of either the 1991 agreement in principle or the August 2001 execution of the Greenwich Stipulation.  *See* § 6229(f)(1) (statute of limitations when partnership items become nonpartnership items).

Mathia contends the 1991 agreement in principle and the 2001 executed Stipulation qualify as "settlement agreements" for purposes of I.R.C. § 6231(b)(1).  Therefore, she argues, the relevant partnership items became nonpartnership items when these agreements were formed, and the IRS was required under § 6229(f) to assess any taxes due within one year of these agreements.

As an initial matter, the parties debate whether there was a binding settlement agreement at all.  Specifically, the Commissioner contends the 1991 agreement in principle lacked material terms, and that the Greenwich Stipulation was not binding absent entry of the proposed decision by the Tax Court.  We need not decide these questions, however, because even if both agreements were settlements in some sense, they were not the types of settlement agreements required by § 6231(b)(1)(C).[6]

---

[6]  A tax controversy may be settled by agreement between the parties, but the term "settlement agreement" is not defined in the Internal Revenue Code.  Because a settlement is a contract, however, courts generally apply principles of contract law to determine whether a settlement has been reached.  *See Dorchester*

(continued...)

Both parties point to a 2000 Federal Circuit case in support of their arguments. In *Crnkovich v. United States*, 202 F.3d at 1325, the Federal Circuit analyzed relevant tax code provisions to determine whether several sets of partners had entered into § 6231(b)(1)(C) agreements, so as to trigger the one-year assessment period under § 6229(f)(1). After explaining that the purpose of § 6231(b)(1)(C) is to enable the resolution of an individual partner's tax liability apart from a unified partnership-level proceeding, the court construed the language of the agreements at issue, under principles of contract interpretation, to determine whether the agreements sought to convert partnership items into nonpartnership items. *Id.* at 1330–33.

In *Crnkovich*, the Federal Circuit found that the partnership items for one set of plaintiffs had been transformed into nonpartnership items because plaintiffs entered into an individual Form 906 closing agreement with the IRS. *Id.* at 1331. The Form 906 agreement constituted a "settlement agreement" under § 6231(b)(1)(C) in large part because it reflected the IRS's affirmative "deci[sion] to deal with the Crnkoviches individually and apart from any partnership-level determinations." *Id.* at 1333. The court explained that, in entering into the Form

[6](...continued)

*Indus. Inc. v. Comm'r of Internal Revenue*, 108 T.C. 320, 330 (1997). "A settlement agreement may be reached through offer and acceptance made by letter, or even verbally." *Id.* It is clear, however, that not every settlement agreement with the IRS transforms partnership items into nonpartnership items, in accordance with § 6231(b)(1)(C).

906 agreement, the "IRS chose to forego the advantages of making its determinations at the partnership level and opted instead to deal with the Crnkoviches individually with respect to the tax issues addressed in the . . . agreement." *Id.* Similarly, the court found the second set of plaintiffs, who entered a stipulation with the IRS rather than a Form 906 agreement, had entered into a § 6231(b)(1)(C) settlement agreement because the stipulation was the product of "the IRS's decision to resolve certain issues [at the individual partner level] rather than to address those issues at the partnership level." *Id.* at 1338.

Here, we have the opposite situation. Even assuming the 1991 agreement in principle and the Greenwich Stipulation were binding agreements with the Commissioner, both agreements—by their express terms—dealt *only* with the treatment of partnership items, and it cannot be disputed that both were entered into by and with the partnership alone.

First, neither the 1991 agreement in principle nor the 2001 executed Stipulation (nor any associated correspondence) makes any reference to the individual liability of any of the Greenwich partners, and the Mathias never entered into a separate closing agreement with the IRS so as to convert his partnership items into nonpartnership items. There is no contention the Mathias ever notified Smith, Greenwich's tax matters partner, or the government that they sought to opt out of the partnership-level proceeding, and nothing in the record reflects an intention, on the part of either party, to settle the Mathias' liability

-17-

separate from the partnership's, via an individual closing agreement or any other means.[7] The agreements at issue did nothing more than contemplate the resolution of the partnership-level proceeding and the tax liability of all partners collectively through a court decision. In fact, the Greenwich Stipulation expressly sets forth "adjustments to the *partnership items* of Greenwich Associates" for tax years 1982–84; there is no mention of Mathia's individual liability or any conversion of partnership items to nonpartnership items. Ex. 29-J at 1, 2 (Greenwich Stipulation) (emphasis added). Accordingly, it is unequivocal that, as a partner bound by the partnership-level decision document, Mathia remained a party to the Greenwich litigation until the Tax Court's decision became final. Nothing in the Greenwich Stipulation or any settlement correspondence gives even the slightest hint that either party intended to convert Mathia's partnership items to nonpartnership items.

Moreover, the Greenwich Stipulation, by its own terms, was a decision binding the partnership and its members. The document was executed pursuant to

---

[7] Mathia does not claim she and her husband entered into a separate closing agreement. And nothing in the record suggests the existence of such an agreement. To the contrary, IRS correspondence suggests the Mathias never entered into an individual closing agreement with the IRS. *See, e.g.*, Ex. 56-J at 1 ("According to my records Doyle V. Mathia was in the partnership when the decision was entered on 1/17/2002. He was assessed based on the decision. No closing agreement was signed."); *id.* at 10 ("I can find no [individual closing agreement] for Mr. Mathia—It is therefore very, very likely that he was covered by the Decision document in Greenwhich and not an individual [closing agreement].").

Tax Court Rule 248(a), which provides: "A stipulation consenting to entry of decision executed by the tax matters partner and filed with the Court *shall bind all parties*. The signature of the tax matters partner constitutes a certificate by the tax matters partner that no party objects to entry of decision" (emphasis added). The "parties" bound by the Stipulation included all members of Greenwich during the tax years in dispute, including Doyle Mathia. I.R.C. § 6226(c)(1). This alone indicates that the partnership-level agreement bound Mathia, and that he did not opt out—as did the partner in *Crnkovich*—by executing an individualized agreement with the IRS.

Finally, language from the negotiations between the Swanton partnerships and the IRS confirms our interpretation of the Greenwich settlement agreements. The IRS made it an express prerequisite of any settlement talks that *all* partners of the Swanton TEFRA partnerships consent to the partnership-level agreement. For example, in an October 1992 letter, the Commissioner stated:

> [Counsel for the partnerships] agreed that the Tax Matters Partners would sign a Rule 248(a) decision document. The amount of our settlement agreement was based on your representation that the respective Tax Matters Partners 1) had the ability to bind *all* the limited partners; 2) were, in fact, binding all the limited partners; and 3) would sign a Rule 248(a) decision document . . . . It was on that basis (i.e. the fact that every partnership . . . and every limited partner in those partnership[s] was settling) that we agreed to enter into a settlement agreement. . . . We stated several times during the course of settlement negotiations that we had no desire to settle with only some of the limited partners and then be required to go into court anyway and litigate with a few dissident stragglers who either

disagreed with the Tax Matters Partner or had no desire to settle the case. Litigating several dissident cases in a variety of cities for several weeks, as you know, would be an extremely expensive and unacceptable course for the government to take.

We will settle only those partnerships in which the Tax Matters Partner will sign the Rule 248(a) decision documents. In the event that there are still some dissenting members in some of the partnerships and the Tax Matters Partner is unwilling to sign the Rule 248(a) decision documents, those partnerships cannot be settled and will have to proceed to trial.

Ex. 19-J at 2 (Oct. 1992 Letter from IRS District Counsel to Zapruder & Odell).

April 1993 correspondence drafted by counsel for the Swanton partnerships shows

the partnerships fully understood the IRS's conditions:

As you know, under the partnership agreements for your partnerships, the general partner was authorized to settle disputes with the IRS based upon the approval of the majority of partners . . . . And all the partners were bound by such approval. The idea behind the settlement with the IRS was that it would eliminate the need for further litigation for both sides, based on the authority to settle granted to the general partners by the majority vote. The IRS now advises us that it wants to have even greater certainty that the settlement will accomplish the purpose of ending the litigation. Instead of relying on the contractual obligation each of you has to abide by the settlement of the majority, it wants the settlement documents for each partnership to state that no limited partner objects to the settlement.

Ex. 16-J at 1 (April 1993 letter from Swanton Partnerships' Tax Defense

Committee). The meaning of these excerpts is plain. As counsel for Greenwich

recognized, the IRS would only settle on a partnership basis. The IRS expressly

sought to avoid the inefficiencies associated with reclassifying Greenwich

partnership items as nonpartnership items and dealing with specific partners on an individual basis.[8]

Ultimately, the record is clear that Mathia was not dismissed from the partnership-level proceeding, and he (and later, his estate) was a party at the partnership-level at all times. Because any agreement did not convert taxpayers' partnership items into nonpartnership items, § 6229(f)'s one-year assessment period does not govern. To the contrary, as a partnership-level agreement, the settlement was governed by the statute of limitations set forth in § 6229(d), which permits the Commissioner to make assessments up to one year after the Tax Court's decision becomes final. Therefore, the January 2003 assessments were timely because they were made well within § 6229(d)'s one-year window, which began to run in April 2002.

---

[8] The record nonetheless discloses that in 1999 and 2000, several Greenwich partners—but not Mathia—may have entered into individual, Form 906 settlement agreements with the IRS. *See* Ex. 56-J at 17, 102 (Notice of Settlement); *see also id.* at 75 (suggesting the Notice of Settlement identified all the individual closing agreements for Greenwich partners). Those (unsigned) Notices of Settlement are instructive in that they show how individual partners may opt out of partnership-level proceedings, with the effect of converting partnership items into nonpartnership items. The Notice of Settlement document identifying these individual agreements states that the result of these individual settlements is: "[P]ursuant to section 6231(b)(1)(C), such partnership items became non-partnership items as of the various [individual settlement dates], and, pursuant to section 6226(d)(1)(A), the aforementioned taxpayers are no longer parties to the proceeding." *Id.* Because he did not execute any such agreement, Mathia remained a party to the partnership-level proceedings.

### B. Burden of Proof

Mathia also contends the Tax Court erred in placing on the estate the burden of proof to demonstrate the IRS's assessments were untimely.

In general, the burden of proof in a Tax Court proceeding is on the taxpayer, "except as otherwise provided by statute or determined by the Court." Tax Court Rule 142(a). The taxpayer also bears the burden of proof when asserting affirmative defenses. *See* Tax Court Rule 39; *Hoffman v. Comm'r of Internal Revenue*, 119 T.C. 140, 146-47 (2002). An exception to this rule exists, however. When a taxpayer introduces credible evidence with respect to a factual issue and meets certain other requirements, I.R.C. § 7491(a) shifts the burden of proof to the Commissioner. Section 7491(a), however, applies only to proceedings "arising in connection with examinations" commencing after its July 22, 1998 enactment.

Relying on § 7491(a), Mathia filed a motion in the Tax Court seeking a declaration the Commissioner bore the burden of proof. The court denied this motion, explaining:

> [S]ection 7491 applies only to court proceedings arising in connection with examinations commencing after the date of its enactment, July 22, 1998. Because the relevant examination is the examination of Greenwich Associates . . . and its partners, which commenced well before July 22, 1998, we conclude that section 7491 is inapplicable.

*Mathia*, 2009 WL 1471716, at *15 n.17 (citations omitted). The Tax Court declined to shift the burden because it found that "the computational adjustments to [taxpayers'] 1982, 1983, and 1984 tax returns were made in accordance with the Greenwich examination." *Id.* We agree.

The application of § 7491(a) turns on whether Mathia's appeal before the Tax Court arose "in connection with" the partnership-level examination of Greenwich, which began before March 16, 1987—well before § 7491(a) took effect. In the action before the Tax Court, Mathia challenged her underlying tax liability, as originally determined in the CDP proceeding. This tax liability, and the resulting assessments, was the direct result of the IRS's late-1980s partnership-level examination. Therefore, the case and the examination were related, § 7491(a) is inapplicable, and the Tax Court correctly assigned the burden to Mathia.

## III. Conclusion

The Commissioner's assessments were timely, and the Tax Court correctly assigned the burden of proof. AFFIRMED.