T.C. Summary Opinion 2016-70

UNITED STATES TAX COURT

CLYDE A. ARASHIRO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4931-13S.                          Filed October 26, 2016.

<u>Jeffrey B. Kahn</u>, for petitioner.

<u>Brian A. Pfeifer</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

_____

[1]All section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In affected items notices of deficiency respondent determined the following penalties and additions to tax with respect to petitioner's 1987, 1988, and 1989 taxable years:

| Year | Addition to tax sec. 6653(a)(1)(A) | Addition to tax sec. 6653(a)(1)(B) | Addition to tax sec. 6661(a) | Penalty sec. 6662(a) |
|------|------|------|------|------|
| 1987 | $467 | ([1]) | $2,338 | -0- |
| 1988 | 303 | -0- | 1,516 | -0- |
| 1989 | -0- | -0- | -0- | $2,065 |

[1]50% of the interest due on the underpayment of tax attributable to negligence or disregard of rules and regulations.

The issues for decision are whether petitioner is liable for the section 6653(a) and 6661(a) additions to tax respondent determined for 1987 and 1988 and for the section 6662(a) penalty respondent determined for 1989.

## Background

Some of the facts are stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in Florida at the time he filed his petition.

Petitioner obtained an undergraduate degree from Barry University. During the years at issue petitioner was employed as a metrologist at a utility company. At some time before December 31, 1987, petitioner attended a seminar that promoted investment in cattle breeding partnerships formed by Walter J. Hoyt III. Petitioner decided to invest in certain of the partnerships. At that time, petitioner's tax experience was limited to the preparation of Forms 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents.

Petitioner was a partner in the Shorthorn Genetic Engineering 1984-A J.V. partnership (Shorthorn) and the Durham Shorthorn Breeding Syndicate 1987-D J.V. partnership (Durham) during 1987, 1988, and 1989. Shorthorn and Durham were formed and promoted by Mr. Hoyt and were subject to the unified partnership audit and litigation provisions enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at

648.[2] Petitioner made cash contributions to either Shorthorn, Durham, or both, totaling $1,000 and $11,374 during 1988 and 1989, respectively.[3]

Respondent mailed a prefiling notification letter to petitioner dated April 27, 1988, regarding his investment in Durham for the 1987 taxable year. The letter stated:

> [o]ur information indicates that you were a partner in * * * [Durham] during * * * [1987]. Based upon our review of the partnership's tax shelter activities, we have apprised the Tax Matters Partner that we believe the purported tax shelter deductions and/or credits are not allowable and, if claimed, we plan to examine the return and disallow the deductions and/or credits.

---

[2]Numerous opinions detail the history of the Hoyt partnerships. See, e.g., Mortensen v. Commissioner, T.C. Memo. 2004-279, aff'd, 440 F.3d 375 (6th Cir. 2006); River City Ranches # 1 Ltd. v. Commissioner, T.C. Memo. 2003-150, aff'd in part, rev'd in part, and remanded, 401 F.3d 1136 (9th Cir. 2005). We take judicial notice that between 1971 and 1988 Mr. Hoyt formed cattle and sheep breeding partnerships (Hoyt partnerships) that he promoted to thousands of investors. See, e.g., Bergevin v. Commissioner, T.C. Memo. 2008-6. Most of the Hoyt partnership returns were examined pursuant to TEFRA as part of an Internal Revenue Service (IRS) initiative to combat abusive tax shelters, and the Hoyt partnerships have been the subject of numerous Tax Court opinions. See id.; see also Mora v. Commissioner, 117 T.C. 279, 280-282 (2001); Hitchen v. Commissioner, T.C. Memo. 2004-265. Mr. Hoyt was convicted of fraud, mail fraud, bankruptcy fraud, and money laundering on February 12, 2001. Bergevin v. Commissioner, T.C. Memo. 2008-6. The essence of the charges was that Mr. Hoyt had defrauded approximately 4,000 investors in the Hoyt partnerships. Id.

[3]The record does not establish that petitioner made any cash contributions to either partnership in 1987.

The letter also warned petitioner that the Internal Revenue Code provided for negligence and substantial understatement additions to tax under sections 6653 and 6661 with respect to the partners.

Despite the warning contained in the prefiling notification letter, petitioner filed a Federal income tax return for 1987, which he signed on July 13, 1988, that claimed deductions for his distributive shares of losses from the Shorthorn and Durham partnerships of $36,324 and $9,674, respectively. The return reported income from nonpartnership sources of $78,289, reported a tax liability of $147, and claimed a refund of $16,126. The return was prepared by a tax return preparation service affiliated with the Hoyt organization, using information petitioner had supplied by mail.

By letter dated December 22, 1988, respondent informed petitioner that the loss deduction claimed with respect to Durham was not allowable and that petitioner's claimed refund for 1987 was therefore reduced by $1,554--the portion attributable to the Durham loss deduction.

Petitioner subsequently filed Federal income tax returns for 1988 and 1989 that claimed deductions for his distributive shares of losses from Shorthorn of $30,270 and $42,390, respectively; reported income from nonpartnership sources of $55,664 and $71,574, respectively; reported total tax liabilities of $596 and

$1,676, respectively; and claimed refunds of $3,430 and $4,469, respectively.[4] As in the case of the 1987 return, petitioner's 1988 and 1989 returns were prepared by a tax return preparation service affiliated with the Hoyt organization.

In 1994 Shorthorn petitioned this Court in docket Nos. 9753-94 and 9815-94 to contest two notices of final partnership administrative adjustments (FPAAs) which adjusted Shorthorn's income and deductions on its 1987, 1988, and 1989 partnership returns (Shorthorn cases). By autumn of 1995, while the Shorthorn cases were pending, petitioner and an IRS Appeals officer (AO) had initiated negotiations to settle petitioner's Hoyt partnership-related tax issues. Petitioner submitted documentation of his cash contributions to the Hoyt partnerships upon the AO's request, and the AO subsequently drafted a Form 906, Closing Agreement on Final Determination Covering Specific Matters (closing agreement), which she sent to petitioner. The closing agreement: (1) disallowed all items of income, gain, loss, deduction, or credit resulting from petitioner's Hoyt partnership investments, (2) allowed ordinary loss deductions equal to the cash petitioner had paid to the Hoyt partnerships, and (3) provided that no additions to tax or penalties would be imposed on any deficiencies attributable to the disallowance of Hoyt

---

[4]Although petitioner remained a partner in Durham during 1988 and 1989, he did not claim any loss deductions associated with Durham for those years.

partnership losses, deductions, or credits. The copy of the closing agreement in the record is not signed by petitioner or a representative of respondent.

On October 17, 2011, the Court entered orders of dismissal and decision in the Shorthorn cases which sustained the FPAAs' adjustments. The decisions became final on January 17, 2012. On December 18, 2012, respondent assessed as computational adjustments additional tax of $9,532, $6,062, and $10,323, for 1987, 1988, and 1989, respectively, as a result of the disallowance of petitioner's claimed deductions for losses from Shorthorn. After respondent assessed an additional $1,630 of tax for 1987 by computational adjustment on May 8, 2012,[5] the correct tax liabilities which petitioner was required to report on his returns for 1987, 1988, and 1989 were $11,129, $6,658, and $11,999, respectively.

Respondent mailed petitioner affected items notices of deficiency dated January 4, 2013, in which he determined that petitioner was liable for additions to tax under sections 6653(a) and 6661(a) for 1987 and 1988 and an accuracy-related penalty under section 6662(a) for 1989 with respect to the Shorthorn adjustments. Petitioner filed a timely petition for redetermination.

_____

[5]The Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioner's 1987 taxable year reflects this assessment. Respondent contends on brief that the assessment arose from the disallowance of petitioner's claimed losses from the Durham partnership.

## Discussion

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

### Negligence

Respondent determined that petitioner is liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) for 1987, an addition to tax for negligence under section 6653(a)(1) for 1988, and an accuracy-related penalty for negligence under section 6662(a) and (b)(1) for 1989. Petitioner contends that he is not liable for the additions to tax or the accuracy-related penalty because he reasonably relied in good faith on the Hoyt organization to properly prepare his 1987 through 1989 returns and on the AO's representation that he would be able to settle his Hoyt partnership liabilities without penalties. Respondent contends that petitioner has failed to prove that he had reasonable cause for the underpayments

---

[6]Sec. 7491(c), which provides that the Secretary has the burden of production with respect to the liability of any individual for any penalty or addition to tax, is effective for court proceedings arising in connection with examinations commencing after July 22, 1998. IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 3001(c), 112 Stat. at 727. Because the examination giving rise to the adjustments of the Shorthorn partnership items began before July 22, 1998, sec. 7491(c) is inapplicable in this case. See Mathia v. Commissioner, 669 F.3d 1080, 1090 (10th Cir. 2012), aff'g T.C. Memo. 2009-120; Ochsner v. Commissioner, T.C. Memo. 2010-122.

of tax shown on his 1987 through 1989 returns and that the underpayments are attributable to negligence within the meaning of sections 6653 and 6662.

For 1987 and 1988, respectively, sections 6653(a)(1)(A) and 6653(a)(1) impose a 5% addition to tax on an underpayment of tax if any part of the underpayment is due to negligence or disregard of rules or regulations. For 1987 section 6653(a)(1)(B) imposes another addition to tax equal to 50% of the interest due on that portion of the underpayment attributable to negligence or disregard of rules or regulations. Regarding 1989, section 6662(a) and (b)(1) imposes a 20% accuracy-related penalty on the portion of any underpayment of tax attributable to negligence or disregard of rules or regulations.

"'[N]egligence' includes any failure to make a reasonable attempt to comply" with the internal revenue laws. Secs. 6653(a)(3), 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. It connotes "a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). Whether a taxpayer was negligent in claiming a deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of

the deduction." Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), aff'g

T.C. Memo. 1994-217.  Negligence is strongly indicated where a taxpayer fails to

make a reasonable attempt to determine the correctness of a deduction, credit, or

exclusion that would seem to a reasonable person to be "too good to be true".  Sec.

1.6662-3(b)(1)(ii), Income Tax Regs.

The section 6662(a) accuracy-related penalty does not apply with respect to

any portion of an underpayment if the taxpayer acted with reasonable cause and in

good faith with regard to that portion.  Sec. 6664(c)(1).  That determination is

made case-by-case, taking into account all relevant facts and circumstances.  Sec.

1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the

taxpayer's effort to assess his proper tax liability for the year.  Id.

Good-faith reliance on professional advice concerning tax laws may be a

defense to the negligence addition to tax.  United States v. Boyle, 469 U.S. 241,

250-251 (1985).  However, "[r]eliance on professional advice, standing alone, is

not an absolute defense to negligence, but rather a factor to be considered."

Freytag v. Commissioner, 89 T.C. at 888.  Such reliance may constitute reasonable

cause if the taxpayer relied in good faith on the professional advice and the

taxpayer's reliance was objectively reasonable.  Sacks v. Commissioner, 82 F.3d at

920; Freytag v. Commissioner, 89 T.C. at 888.  Nevertheless, a taxpayer cannot

negate the negligence penalty by relying on the advice of a transaction's promoters or other advisers who have a conflict of interest. Hansen v. Commissioner, 471 F.3d 1021, 1031 (9th Cir. 2006) (reliance on Hoyt organization), aff'g T.C. Memo. 2004-269; see also Gustashaw v. Commissioner, 696 F.3d 1124, 1139-1140 (11th Cir. 2012), aff'g T.C. Memo. 2011-195.

Although we are mindful that petitioner had limited tax experience at the time he filed his returns, we conclude that his actions in relation to his investment in Shorthorn constituted a lack of due care and a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Most significantly, petitioner claimed deductions for the substantial losses from Shorthorn on his 1987, 1988, and 1989 returns despite his receipt in 1987 of a prefiling notification letter warning him that the IRS had identified Durham, a similar partnership promoted by the same organization, as an abusive tax shelter. Moreover, petitioner received a second letter from the IRS in late 1988 which reiterated that he could not claim any tax benefits from his investment in Durham. At the least, these letters should have caused petitioner to question the too-good-to-be-true nature of the tax benefits from the Shorthorn losses, which allowed him to claim deductions for losses of $36,324, $30,270, and $42,390 for 1987, 1988, and 1989, respectively, after investing (insofar as the record discloses) a mere $12,374

in Shorthorn during those years.[7]  Nevertheless, there is no evidence that petitioner made any attempt to independently investigate the propriety of these losses before filing his returns, even after receiving notifications that would have caused a reasonable person, in our view, to investigate further.  Instead, he merely filed returns prepared for him by a Hoyt organization affiliate.

We also conclude that petitioner has failed to demonstrate that the underpayments relating to the disallowed Shorthorn loss deductions were due to reasonable cause and made in good faith.  Although petitioner argues that he reasonably relied on the Hoyt organization's tax return preparation service to properly prepare his returns, a taxpayer cannot escape the negligence penalty by relying on the advice of promoters or those closely affiliated with the scheme with an obvious conflict of interest.  See Hansen v. Commissioner, 471 F.3d at 1031; Ochsner v. Commissioner, T.C. Memo. 2010-122; see also Gustashaw v. Commissioner, 696 F.3d at 1139-1140.

---

[7]It is unclear from the record whether petitioner's $12,374 in cash contributions to the Hoyt partnerships pertained to Shorthorn, Durham, or both. However, we will give petitioner the benefit of the doubt and assume, for purposes of deciding his liability for the penalties at issue, that all of his cash contributions were to Shorthorn.  To the extent one were to assume that some of the cash contributions were to Durham, the disparity between the cash contributions to Shorthorn and the losses petitioner claimed from it would be greater.

Petitioner also contends that he should not be liable for the negligence penalties because he reasonably relied on the AO's representations that his tax liabilities arising from the disallowance of the Shorthorn loss deductions would be settled without penalties once he signed and returned the closing agreement. Petitioner contends that he signed and returned the closing agreement and that respondent then failed to honor it.

We reject petitioner's contention. The only copy of the closing agreement petitioner produced is not signed by either petitioner or a representative of respondent.[8] Thus, accepting petitioner's contention requires us to believe that he signed the closing agreement without making a copy of the signed version and instead--quite implausibly--made a copy of the agreement before signing it and retained that version. We are unpersuaded by petitioner's self-serving testimony in this regard, see Shea v. Commissioner, 112 T.C. 183, 189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), and find that he did not return a signed copy of the closing agreement to respondent. Accordingly, petitioner is liable for the section 6653(a) additions to tax for 1987 and 1988 and the section 6662(a) accuracy-related penalty for 1989.

_____

[8]See Rev. Proc. 68-16, sec. 6.07, 1968-1 C.B. 770, 780 (a closing agreement is always signed first by the taxpayer and ordinarily constitutes an offer to agree, while the signature for the Commissioner constitutes acceptance); see also Smith v. Commissioner, T.C. Memo. 1991-412.

Substantial Understatements of Income Tax

Respondent determined that petitioner is liable for additions to tax under section 6661 for 1987 and 1988 and an accuracy-related penalty under section 6662(a) and (b)(2) for 1989 for underpayments attributable to substantial understatements of income tax. Petitioner contends that he is not liable for the additions to tax under section 6661 because respondent abused his discretion in failing to waive them and further that he is not liable for the accuracy-related penalty under section 6662(a) because he reasonably relied on the AO's representations that he would not have penalties if he settled. Respondent contends that petitioner has failed to demonstrate that respondent abused his discretion in failing to waive the additions to tax or that petitioner acted with reasonable cause or in good faith with respect to the understatements arising from the Shorthorn partnership items.

For 1987 and 1988 section 6661(a) imposes a 25% addition to tax on any underpayment attributable to a substantial understatement of income tax. For 1989, section 6662(a) and (b)(2) imposes a 20% penalty on any underpayment attributable to a substantial understatement of income tax. An "understatement" of income tax is the excess of the amount of tax required to be shown on the return over the amount of tax actually shown on the return. Secs. 6661(b)(2)(A),

6662(d)(2)(A). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Secs. 6661(b)(1)(A), 6662(d)(1)(A).

Petitioner's understatements of income tax for 1987, 1988, and 1988 were $9,532, $6,062, and $10,323, respectively. The amounts of tax required to be shown on petitioner's 1987, 1988, and 1989 returns were $11,129, $6,658, and $11,999, respectively. Thus, the understatements for each year relating to the Shorthorn adjustments are substantial because they exceed $5,000, which is greater than 10% of the amounts of tax required to be shown on the returns ($1,113, $666, and $1,200, respectively).

With respect to 1987 and 1988, section 6661(c) authorizes the Commissioner to waive an addition to tax if the taxpayer shows that he had reasonable cause for an understatement and acted in good faith. A taxpayer must prove that the Commissioner abused his discretion by denying waiver of the section 6661 addition to tax. Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). To carry this burden the taxpayer must show (i) that he requested a waiver under section 6661(c), Klieger v. Commissioner, T.C. Memo. 1992-734, (ii) that the Commissioner refused the request, id., and (iii) that the Commissioner's refusal

to waive the addition to tax was arbitrary, capricious, or without sound basis in fact, <u>Mailman v. Commissioner</u>, 91 T.C. at 1084.

Petitioner contends that his requested waiver of the section 6661 additions to tax was formalized by his signing and mailing of the closing agreement (which by its terms would have relieved him of any penalties associated with deficiencies attributable to disallowance of Hoyt partnership losses, deductions, or credits). Petitioner argues that respondent's failure to honor the terms of the closing agreement constitutes an arbitrary and capricious refusal of petitioner's waiver request. As we do not find credible petitioner's contention that he signed and returned the closing agreement, this argument is unavailing. Even if we assumed that petitioner had requested a waiver of the section 6661 additions to tax, respondent's refusal would be reviewable for abuse of discretion. <u>Id.</u> On the basis of our holding <u>supra</u> that petitioner's claiming deductions for the Shorthorn losses for 1987 through 1988 was negligent, we likewise hold that any denial by respondent of a waiver of the section 6661 additions to tax would not constitute an abuse of discretion. Accordingly, petitioner is liable for the section 6661 additions to tax for 1987 and 1988.

With regard to 1989, no penalty is imposed under section 6662(a) with respect to any portion of an underpayment if the taxpayer acted with reasonable

cause and in good faith with regard to that portion. Sec. 6664(c)(1). Petitioner's claim that he reasonably relied on the AO's representations that he would not be liable for penalties if he settled is unavailing because, as previously discussed, we are simply not persuaded that petitioner in fact signed the closing agreement and returned it to respondent. Furthermore, we have held <u>supra</u> that petitioner did not act with reasonable cause or in good faith with respect to the underpayment related to the Shorthorn loss deduction claimed for 1989. The underpayment for 1989 is therefore also attributable to a substantial understatement of income tax under section 6662(b)(2).[9]

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[9]Only one sec. 6662(a) penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one of the relevant factors. Sec. 1.6662-2(c), Income Tax Regs. We have already held that petitioner is liable for the sec. 6662(a) penalty for 1989 on the basis of negligence.